UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-14057-CR-ROSENBERG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL HARDING,

    Defendant.

_____/

## MOTION FOR DOWNWARD VARIANCE

The defendant Michael Harding, through counsel, requests that the Court impose a downward variance from the sentencing guideline range as grounds the defendant states:

### INTRODUCTION

On July 23, 2015, Homeland Security Agent Patrick McCall in Wilmington, Delaware was acting in an undercover capacity investigating child exploitation on the Kik Messenger Application. Kik Messenger allows cellular phone users to share private messages, photos, videos and other digital content. Kik Messenger also hosts "chat rooms," where users may communicate with multiple other users.

Agent McCall saw that a user named "desthfromabovee" had posted two child pornography images in a chat room. Agent McCall downloaded the images.

On August 13, 2015, Agent McCall again visited the same chat room and saw that "desthfromabovee" had posted a child pornography video on August 4, 2015. Agent McCall downloaded the posted video. On August 17, 2015, Agent McCall located and downloaded one other child pornography still image posted by "desthfromabovee" on July 26, 2015.

Agent McCall obtained the subscriber information for the Internet Protocol (IP) address used by "desthfromabovee." That account was in the name of Michael Harding. Agent McCall also learned that several of the postings were done on AT&T Mobility, a wireless carrier. He determined that the AT&T modility subscriber on the relevant dates and times was Michael Harding.

At this point the investigation was referred to local HSI Special Agent Brian Ray. Agent Ray obtained a search warrant for Mr. Harding's residence of 343 N.E. Granduer Avenue, Port St. Lucie, Florida.

Relevant to this case, the search revealed: 1) one Apple MacBook Pro computer; 2) one PNY USB drive; 3) one Lexar USB drive; 4) one LG-D800 cellular phone and 5) one Samsung SM-G9Z8A cellular phone. Each device contained still and video images of child pornography.

The Government alleges that a series of Kik Messenger and Skype instant messages reflect Mr. Harding offering his minor step-daughter for sexual purposes to another Kik Messenger and Skype user. Finally, the Government alleges that it recovered a thumb nail photo from the LG-D800 cellular phone showing Mr. Harding

2

engaged in sexual contact with his step-daughter. Mr. Harding has pled no contest to these allegations.

WhEN Mr. Harding was arrested he was a highly decorated patrolman in the Port St. Lucie, Florida Police Department. He was married, with two step daughters and one infant daughter. He had just purchased a home with his wife. Now, all of that is gone. He has lost his career, his marriage, his child and his home. The term tragic does not do it justice.

However, Mr. Harding is no stranger to tragedy. It has followed him since before he was born.

When Mr. Harding's mother, Julie Harding, was six months pregnant with Michael, his father, an aspiring paramedic, was murdered while being robbed. That left his mother, at age 21, to raise Michael as a single parent.

Unfortunately, Julie Harding lacked the skills and discipline to raise her son properly. She worked two jobs and was constantly abusing drugs and alcohol. Michael, who has no siblings, was either left alone to fend for himself or was handed off to whomever would watch him when his mother was away. At the age of 12, it was not unusual for him to be on his own for a week or more.

Being on his own so frequently and for such lengthy periods of time, Michael was an easy mark for abuse. First, when he was seven years old, Michael was sexually abused on multiple occasions by a friend's older brother. Then, when he was about nine years old, Michael was again sexually abused by a friend's mother

3

several times. He did not reveal these incidents to his mother or anyone else because he believed he would be punished.

Given his loneliness and sexual abuse, Michael began to suffer from depression at an early age. At 20, he finally sought help from a therapist, Dr. Yanique Duval, in Port St. Lucie. While he did not reveal the sexual abuse, he did discuss his addiction to adult pornography and his poor relationship with his mother. He was diagnosed with depression and anxiety. He was prescribed Trazadone, Klonopin, Zoloft and Wellbutrin. Trazadone is an anti-depressant and anti-anxiety medication. Klonopin, or clonazepam, is an anxiety and panic disorder medication. Zoloft, or sertraline, is prescribed for major depressive disorders, as well as anxiety and panic. Welbutrin, or bupropion, is used to treat depression. Michael attended therapy for approximately one year and found it beneficial. Unfortunately, he had to stop the sessions because he could no longer afford them.

Although Michael could not afford therapy sessions, he continued to be prescribed anti-depressant medication through his family physician right up until his arrest. Unfortunately, with no therapy, Michael began abusing prescription hydrocodone and klonopin, along with alcohol and marijuana. Clearly, he was unable to deal with his lifelong depression and anxiety. On multiple occasions before his arrest he was even suicidal.

At the undersigned's request, Michael underwent a psychological evaluation by Michael Brannon, Psy.D., a licensed psychologist. After extensive testing and

4

interview, Dr. Brannon determined that Michael suffers from persistent depressive disorder and an unspecified anxiety disorder. He found these conditions to be significantly aggravated by alcohol, marijuana and pornography. He would likely benefit from treatment for sex offenders and for drugs and alcohol.

Despite all of the adversity, Michael persevered and made admirable accomplishments. After dropping out of high school early in the twelfth grade, Michael applied himself and obtained his GED diploma in 2006. He then went on to obtain his associate's degree in criminal justice from Indian River State College. Next he attended the police academy, also at Indian River State College.

From 2008 until 2012, Michael was employed as a police officer for the Fort Pierce Police Department. He was a patrolman assigned to the DUI unit. In 2011 he was named as "Officer of the Year" in the Fort Pierce Police Department. In 2012, he was recognized by the "Hundred Club" of St Lucie County as the outstanding emergency services officer from his agency. He was recognized by the Adult and Community Educators of Florida for overcoming his status as a high school dropout by finishing adult education and becoming a police officer  But as much as he excelled as a police officer, the stress and isolation of the job took their toll, especially in combination with his lifelong history of sexual abuse, anxiety and depression. He increasingly abused alcohol, prescription drugs, and marijuana. He also increased his reliance on viewing pornography, some of it child pornography.

5

## MEMORANDUM OF LAW

The defendant suggests that there are real and meritorious reasons for a downward variance in this case. First, the offense level provision dictating the sentencing range, U.S.S.G. § 2G2.2, is arbitrary and outdated, resulting in an artificially high recommendation. Second, Mr. Harding's personal history and characteristics support the conclusion that a sentence of life imprisonment is excessive.

Initially, the fact that the sentencing guideline offense level under U.S.S.G. § 2G2.2 is so much higher than for § 2G1.3 (enticement) or § 2G2.1 (production), arguably more egregious conduct, demonstrates how arbitrary and inflated it is.

The unfair nature of § 2G2.2 results from the near universal application of its enhancements in every case. Anecdotally, it is the undersigned's experience that almost every child pornography defendant:

1. is charged by the government with "receipt" of child pornography under 18 U.S.C. § 2252(a)(2), rather than "possession" under 18 U.S.C. § 2252(a)(4)(B), thus requiring an increased base offense level of 2 under U.S.S.G. § 2G2.2(a)(2);

2. possesses at least one depiction of a "prepubescent minor or a minor who had not attained the age of 12," warranting a two level increase under § 2G2.2(b)(2);

6

  3. receives child pornography by way of internet file sharing and is consequently attributed a five level increase by the United States Probation Office under § 2G2.2(b)(3)(B);

  4. possesses at least one image which portrays "sadistic or masochistic conduct or other depictions of violence," requiring a four level increase under § 2G2.2(b)(4);

  5. uses "a computer or an interactive computer service" to obtain the child pornography, supporting a two level increase under § 2G2.2(b)(6);

  6. possesses a combination of videos and pictures which reach a total of 600 or more images, supporting a five level increase under § 2G2.2(b )(7)(D).

  Therefore, almost all offenders are given a base offense level of 40, which is reduced to 37 after acceptance of responsibility. In Criminal History Category I this results in a guideline range of 210 - 262 months, or twenty-two months in excess of the statutory maximum. Thus, almost every defendant is effectively prevented from receiving a sentence below the high end of the five-year to twenty-year statutory range.

  In this district, the Honorable James Lawrence King issued a carefully reasoned opinion supporting a variance from a range of 210 - 260 months down to the statutory minimum 60 months.

  *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. FL. 2009). Mr. Riley was arrested with over 900 images and 10 videos of child pornography. Judge King

7

carefully considered the defendant's family history, active family support, and low risk of reoffending with appropriate treatment and supervision. He then discussed at length that due to arbitrary upward increases in the base offense levels for child pornography and the near-automatic application of numerous specific offense enhancements (i.e. distribution, use of a computer, prepubescent victims and number of images), rarely, if ever, will a defendant score at the low end of the statutory range. Rather, almost all defendants will score toward the high end of the statutory range, no matter their personal characteristics and degree of culpability.

It is also important to note that the United States Sentencing Commission itself has been critical of the existing child pornography guidelines and has recommended that they be lowered and more carefully tailored to reflect actual offense conduct.[1] In 2012, the Commission issued a report to Congress assessing the fairness and effectiveness of the child pornography guidelines, in particular those applying to non-production offenses. In essence, the Commission found that the guidelines were inordinately severe and were not serving the specific sentencing goals of 18 U.S.C. § 3553.

> [T]he statutory and guideline penalty scheme in [non-production] cases should be revised to reflect current offense conduct, evolving modes of electronic communications and other technologies used by offenders and knowledge gained from emerging social science research. Such

---

[1] Pursuant to the Protect Act of 2003, Congress removed the Commission's authority to change or revise child pornography guidelines.

8

> revisions are needed to more fully differentiate among offenders based on their culpability and sexual dangerousness.

Federal Child Pornography Offenses, United States Sentencing Commission, 2012.

The Commission recognized that most of the offense conduct enhancements applied in U.S.S.G. § 2G2.2 had become outdated due to the dramatic changes in the modus operandi and technology used to commit a typical non-production child pornography offense. For example, data shows that 96.3% of all non-production offenders possess images of children under the age of 12. Consequently, what was originally intended as an aggravator to reflect a more serious offender has now become a universal enhancement. Likewise, the "use of a computer" enhancement applies universally and is no longer a valid indicator of egregious conduct. The adjustments for distribution, sadomasochistic images and quantity of images also apply almost universally and are therefore arbitrary and fail to address the goals of 18 U.S.C. § 3553.

Finally, recognizing that there is no meaningful distinction between the offenses of "possession" and "receipt," the Commission unanimously recommended that Congress reduce the mandatory minimum sentence imposed for "receipt." Such

9

a change would reduce the effect of the charging decision and enhance the effect of the particular relevant conduct in a case, which is a primary premise of guidelines.[2]

Accordingly, the defendant suggests that § 2G2.2 should not drive the guideline offense level. Rather, the level produced by using the adjusted offense level from § 2G1.3 and § 2G2.1 (i.e., 40) is a more fair and accurate reflection of Mr. Harding's offense conduct.

The defendant also respectfully contends that Mr. Harding's personal characteristics warrant a downward departure from the guideline range. Pursuant to 18 U.S.C. § 3553(a), in imposing sentence the Court "shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant."

The positive personal characteristics of Mr. Harding are remarkable, yet they are in no way reflected in the sentencing guideline range. And, while his offense was certainly reprehensible, he has also overcome great adversity and made significant valuable contributions to society.

On multiple occasions, by multiple persons, Mr. Harding was sexually abused at a very young age. This is a factor, as Dr. Brannon will testify, that contributed to Mr. Harding's offense conduct in this case. He was raised with little or no parental

---

[2] The Commission also noted that the Criminal Law Committee of Judicial Conference had also recently recommended that Congress remove the statutory minimum for receipt because "there is no meaningful difference between receipt [and] possession. "Testimony of Chief Judge Casey Rodgers, N.D. Fla., to the Commission (2/15/2012).

10

guidance and was left to fend for himself for his entire juvenile life. Despite these circumstances, he worked to better himself and to ultimately help others. As noted, his crime is serious and he will, no doubt, receive a very lengthy sentence. But in light of his personal history and circumstances, the sentencing range called for by the guidelines is excessive.

Several circuits, including the Eleventh, have upheld significant downward variances, pursuant to 18 U.S.C. § 3553(a), based on the favorable personal history and characteristics of the defendant. In *United States v. McBride*, 511 F3d 1293 (11th Cir. 2007) the Eleventh Circuit upheld a variance from a range of 151 - 188 months down to 84 months followed by 10 years of supervised release. The defendant possessed 981 images and 45 videos of child pornography. In arriving at its sentence, the district court noted that the defendant had been abandoned by his parents and sexually abused for years by his grandfather. The court found that in light of those and other factors, an eighty-four month sentence was sufficient.

The Fourth Circuit affirmed a variance from 78 - 97 months to 24 months in *United States v. Smith*, 275 S Fed. Appx. 184 (4th Cir. 2008). Mr. Smith possessed over 2400 images and 262 videos of child pornography. The district court relief upon the defendant's age (64), lack of criminal history, absence of risk of future violations, exemplary life, and strong family ties.

A variance from a range of 135 - 168 months down to 66 months was affirmed by the Sixth Circuit in *United States v. Grossman*, 513 F .3d 592 (6th Cir. 2008). Mr.

11

Grossman had traded child pornography on the Internet for over five years and was an active member of an on-line child pornography trading group. He was arrested with "thousands" of images in his possession. The sentencing court based its decision on the grounds that the defendant was a promising candidate for rehabilitation and he appreciated the magnitude of his offense and the effect on its victims .

For the stated reasons, the defendant requests that the Court impose a downward variance to 300 months imprisonment.

                MICHAEL CARUSO
                FEDERAL PUBLIC DEFENDER

By:    *s/Fletcher Peacock*
        Fletcher Peacock
        Assistant Federal Public Defender
        Florida Bar No. 441996
        109 North Second Street
        Fort Pierce, Florida 34950
        Tel: 772-489-2123
        Fax: 772-489-3997
        E-Mail: Fletcher_Peacock@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on May 10, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Fletcher Peacock*
Fletcher Peacock