UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-14359-CV-ROSENBERG
(CASE NO. 15-14057-CR-ROSENBERG)
MAGISTRATE JUDGE WILLIAM MATTHEWMAN

MICHAEL EDWIN HARDING,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## UNITED STATES OF AMERICA'S AMENDED PRETRIAL NARRATIVE STATEMENT

The United States submits this Amended Pretrial Narrative Statement.[1] The United States previously filed a pretrial narrative statement on August 30, 2019 (DE: 27). After filing that statement, the Court granted Movant's motion to expand the scope of the evidentiary hearing (DE: 65). The scope of the hearing now includes Ground Two and Ground Four of Movant's 2255 Motion. This Amended Pretrial Narrative Statement addresses both Ground Two and Ground Four.

    **A.**    **Brief General Statement of the Case**

The Movant, MICHAEL EDWING HARDING, moved to vacate, set aside, or correct his conviction in a motion filed on September 4, 2018 (DE: 1). Movant presented eight distinct claims for relief and requested an evidentiary hearing (*Id.*). On October 29, 2018, the United States filed

---

[1] Documents filed in this civil case will be referred to as "DE:" followed by the appropriate docket entry number. Documents filed during the Movant's criminal proceedings will be referred to as "*Cr*DE:" followed by the appropriate docket entry number.

1

a response to each of those eight claims (DE: 6). On January 4, 2019, Movant filed a reply to the United States' response (DE: 13). On May 18, 2019, the Court filed an order appointing counsel and setting an evidentiary hearing for only Movant's claim (Ground 4) that his defense counsel was ineffective for failing to raise objections to the Presentence Investigation Report ("PSI") and for abandoning raised objections at sentencing without his assent (DE: 17). On June 21, 2021, the Court expanded the scope of the evidentiary hearing to include Movant's claim (Ground 2) that his defense counsel was ineffective for misadvising him regarding the consequences of his plea (DE: 65).

In Ground Two, Movant claims his counsel's representation was ineffective because his counsel failed to properly advise him concerning the application of the federal sentencing guidelines, misadvised him about the consequences of his guilty plea and specifically failed to advise him about sex offender registration and possible civil commitment (*See* DE: 1-1: p. 4-9). Because of being misadvised, Movant claims his plea was not knowingly, voluntarily, or intelligently entered (*Id.*: 4). Movant claims that his counsel failed or incorrectly conveyed how the advisory guidelines would apply to him at sentencing and that his advisory guideline range would be life (*Id.*: 4). Specifically, movant claims that his counsel never advised him that he could be subject to an additional five level enhancement under §4B1.5 and that his counsel intentionally withheld the fact that the government was requesting that this enhancement be applied (*Id.*: 4-5). Movant also claims his counsel advised him that he would receive a favorable sentence that would not exceed thirty years if he entered the plea and did not subject the government or the witnesses to a jury trial (*Id.*: 6). Additionally, Movant claims that his counsel failed to advise him about mandatory sex offender registration and possible indefinite civil commitment (*Id.*: 7). Movant

claims that he would have chosen to proceed to trial if he had been properly apprised of the consequences of his plea (*Id.*: 7).

In Ground Four, Movant claims that his defense counsel was ineffective for failing to raise or abandoning objections to the following portions of the PSI (*See* DE: 1-1: p. 10-15, 19-21):

(1) 4 level enhancement for material portraying sadistic, masochistic or other depictions of violence, as listed in paragraph 30 of the PSI;

(2) 5 level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, as listed in paragraph 31 of the PSI;

(3) 5 level enhancement based on the offense involving 600 or more images, as listed in paragraph 33 of the PSI;

(4) 5 level enhancement based on the Chapter Four enhancement for engaging in a pattern of activity involving prohibited sexual conduct, as listed in paragraph 38 of the PSI.

**B.     Narrative Written Statement of Facts to be Demonstrated by the Evidence**

At the evidentiary hearing, the United States expects the evidence to prove three facts: (1) Mr. Peacock provided Movant with effective assistance of counsel; (2) Movant's claim lacks credibility, and (3) Movant's claims would not have changed the result, in other words there was no prejudice. The following facts will be proven through the testimony of Mr. Peacock, the evidence in the record, transcripts of the court hearings, and the testimony and evidence presented by Agt. Brian Ray:

*1.     Mr. Peacock Provided the Movant with Effective Assistance of Counsel*

The United States expects the evidence to prove that Mr. Peacock provided effective assistance of counsel to Movant. Mr. Peacock raised all legal objections that he could ethically

raise. He communicated with the probation office and got them to lower the advisory guideline range. He advocated for Movant and protected Movant from making admissions that could have been used against him in State Court. Mr. Peacock communicated with Movant about his legal options, the calculation of the guideline range, and the benefits of entering a no contest plea.

Mr. Peacock had reviewed the discovery in the case and recognized that there were facts upon which Movant could be found guilty of capital sexual battery in State Court. Mr. Peacock was aware that the State of Florida was intent on bringing charges against Movant for multiple counts of capital sexual battery, which provided for a mandatory life sentence.

Mr. Peacock's intent was to attempt to convince Judge Rosenberg that a life sentence for the federal case was not appropriate. He wanted to put Movant in as good a light as possible and he wanted to reduce the guideline range as much as he could with a reduction for acceptance of responsibility. He also recognized that Movant would still want to contest the State of Florida case. That was at the heart of the request to get a no contest plea to Counts 5 and 6. Mr. Peacock explained to Movant multiple possible scenarios and options in his case. Peacock discussed the strategy with Movant who understood the principles, factual situation, and the legal implications when it came to sentencing. Movant agreed with the strategy. And movant understood that the plea of no contest had the same validity as any other guilt findings by the Court.

Mr. Peacock provided effective assistance of counsel to Movant by advising him to plea no contest to Count 5 and Count 6. Mr. Peacock reviewed the discovery and the law with Movant. Movant understood the law and charges of attempted enticement and production of child pornography.[2] In particular, as it relates to Count 5, the evidence presented in open court, in the

---

[2] In his 2255 Motion, Movant originally made only a general claim that his defense counsel misadvised him regarding the law applicable to Count 5 and Count 6. Only later did his counsel, within the motion to expand the evidentiary hearing and the reply, further elaborate the claim that

court filings, and discovery, provided overwhelming evidence that Movant committed the crime of attempt to coerce a minor to engage in sexual activity with a child. Movant was not merely fanaticizing about swapping his stepdaughter for sex with another man's child. He is a pedophile who produced, received, and distributed child pornography. As he stated in chat conversations, he was actually sexually abusing his own step stepdaughter. The photograph of her performing oral sex on him is direct evidence of that fact. He coordinated the location, logistics and cover story for the meeting to swap children. The totality of the facts in this case show that Movant sincerely wanted to swap his stepdaughter with another man so he could sexually abuse the other man's daughter.

    Movant was willing to admit guilt to the first four counts of the Superseding Indictment. But Movant could not admit guilt to the facts supporting Counts 5 and 6, because admitting those facts could have been used against him in State Court. Count 5 alleged enticement and was based upon chat conversations Movant had with another individual. Within those messages, Movant admitted to performing sex acts with one of his stepdaughters. Admitting he made those statements would have been strong evidence that he committed a capital sexual battery on a minor under 12 years of age, which is an offense that carries a mandatory life sentence in the State of Florida. Count 6 alleged production of child pornography based upon an image found on Movant's phone. He had video-taped his stepdaughter performing oral sex on him. Admitting he produced the image would have been damning evidence that he committed sexual battery on a minor less than

---

Mr. Peacock advised Movant to admit to a charge without a legally sufficient factual basis. As Judge Rosenberg found at the plea hearing, the facts set forth were sufficient to establish the crime of attempt to coerce and entice a minor to engage in sexual activity. *See, U.S. v. Yost*, 479 F.3d 815 (2007); *U.S. v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010); *U.S. v. Lee*, 603 F.3d 904 (11th Cir. 2010); *U.S. v. Bilus*, 626 Fed.Appx. 856, 877-79 (11th Cir. 2015): *United States v. Wilkerson*, 702 Fed.Appx. 843, 846-51 (11th Cir. 2017); *U.S. v. Thornburg*, 760 Fed.Appx. 937, 943-47 (11th Cir. 2019).

12 years of age, which is an offense that carries a mandatory life sentence in the State of Florida. In short, admitting guilt to Count 5 or Count 6 would have resulted in a virtually certain life sentence in Florida State Court.

By following this strategy, with the agreement of Movant, Mr. Peacock secured Movant a three level reduction for acceptance of responsibility, without an admission of guilt to two counts, and without conceding to State charges that accused him of sexually battering his two step-daughters.

After the initial PSI was distributed, Mr. Peacock spoke with the probation officer who prepared the initial PSI and convinced him to eliminate the grouping calculation for the final PSI. That adjustment in the way the guidelines were calculated had the effect of lowering the total number of points. While it did not bring the final guideline calculation below a guideline range of life, it did make the raw calculation of points closer to a non-life guideline level and enable Mr. Peacock to make a stronger argument for a variance.

Mr. Peacock also filed a motion for downward variance and argued for the substantive unreasonableness of the advisory guideline range. Mr. Peacock later filed addendum objections to the PSI, because he had resolved the grouping issues with Probation and the defense was taking a position of not contesting facts within the narrative portion of the PSI (paragraphs 12-20, 31, 38-40, 46-49, 58). This was done in an attempt to avoid having the United States make a lengthy and detailed presentation of the facts. At the same time, Movant continued to maintain his position of "not guilty" regarding the pending State of Florida criminal charges in St. Lucie County, Florida, Case No. 15-CF-2947. Mr. Peacock agreed with the calculation of the PSI at the Sentencing Hearing.

Mr. Peacock had reviewed the evidence provided in discovery and knew that there was a factual basis for each of the facts recited in the PSI and each of the facts stated in support of the plea. Mr. Peacock did not raise an objection to the 4-level assessment of points for sadomasochistic images or the 5-level enhancement based on the offense involving 600 or more images, because Mr. Peacock had no legal or factual reason to raise the objection. Mr. Peacock had a discovery conference with the investigating agent Brian Ray. During the conference, Mr. Peacock was shown the contraband images found in possession of Movant. He saw the number of still images and videos depicting child pornography. He specifically looked for the number of images and whether or not they include sadistic images. The evidence contained 102 videos and 606 still images depicting minor children, including prepubescent children, engaging in sexually explicit conduct. The evidence contained more than one sadistic image. Mr. Peacock was also in possession of the forensic report produced by Agt. Ray. Mr. Peacock reviewed the guidelines with Movant, and it included discussion about the specific offense characteristics. Movant would not have been able to review the images with Mr. Peacock at the jail because the images are contraband.

Mr. Peacock originally raised objections to the 5 level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor and the 5 level enhancement based on the Chapter Four enhancement for engaging in a pattern of activity involving prohibited sexual conduct. The original denials were modified in the Defendant's Amended Objections to the Presentence Report to be "nolo contendere" objections, stating that Movant chose to not defend the allegations (*Cr.*D.E: 95). The original objection was to the facts underlying the enhancements. There was no legal objection because both enhancements could legally be applied in the same guideline calculation (See, *United States v. Carter*, 292 Fed.Appx.

16 (11th Cir. 2008); *United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010); *United States v. McRee*, 625 Fed.Appx. 430 (11th Cir. 2015). The "nolo contendere" objection was maintained because an admission to the facts for that enhancement would be an admission to facts supporting the capital sexual battery case. The "nolo contendere" position was also taken with regard to the facts in the PSI so Movant would receive a three-point reduction for acceptance of responsibility and to avoid a prolonged presentation of evidence if the facts had been denied. Movant agreed to this strategy.

Mr. Peacock did not merely abandon objections to the testimony of government witnesses. On the second day of the sentencing hearing, Mr. Peacock made hearsay and confrontation clause objections to the admissibility of Ashley's Harding's testimony regarding the statements of her children. The Court overruled the objection and considered the facts during sentencing. After imposition of the sentence, Mr. Peacock reiterated his objections to the hearsay nature of the evidence and lack of confrontation with regard to statements made by the two stepdaughters of Movant. Mr. Peacock made reference to both the testimony of Sheila LaGrega and Ashley Harding. In response, the Court articulated that it had weighed all of the evidence when imposing sentence.

In his argument at the Sentencing Hearing, Mr. Peacock argued for a downward variance based on a recognition by the Sentencing Commission that the guideline range was too high for possession of pornography offenses. He asked Judge Rosenberg to allow Movant an opportunity to redeem himself in the future and not spend the rest of his life in prison. Mr. Peacock articulated how he attempted to resolve the case to avoid the necessity of having Movant's stepchildren testify, but the federal government and local prosecutors rejected his attempts. He then argued that the imposition of a life sentence in federal court would result in a certain state trial, necessitating the

8

testimony of the minor victims.  He requested mercy so that one day Movant could have a second chance at life in order to redeem himself.   After the sentence was imposed, Mr. Peacock objected to the life sentence as being arbitrary and excessive for the reasons he stated during the sentencing hearing and again pointed out that the Sentencing Commission had criticized the guidelines.

### 2. *The Movant's Claims Lack Credibility*

Movant's claims of ignorance and misadvise are clearly irreconcilable with the record of the plea proceeding. Movant was clearly informed during the plea that he was facing life imprisonment and the possibility that each count could run consecutively. Movant understood that neither the Court nor anyone else would be able to determine with certainty the advisory guideline range until after the Pre-Sentence Report had been completed and the government and defense had an opportunity to challenge the facts and application of the guidelines. Movant understood that the sentence imposed may be different from any estimate his attorney may have given him. Earlier in the plea colloquy, Movant admitted that no one had made any promises or assurances to him to influence him to enter a plea.  Movant acknowledged that he understood that he would not be able to withdraw his plea if the sentence was higher than the guideline range or if the guideline range was life.  Movant stated that he was fully satisfied and had fully discussed the charges with his attorney. Movant's claims are so contrary to the record made during the sentencing hearing that they lack credibility. Mr. Peacock's testimony will show that Movant is misrepresenting the conversations they had in advance of the plea and sentencing.

Movant's claims (Count 4regarding the guidelines are also contradicted by the record and will be contradicted by the testimony of Mr. Peacock and the evidence presented at the hearing by Agent Brian Ray.

      a.     <u>Sadomasochistic Images</u> – Movant's claims are contradicted by the transcript of the plea colloquy. Movant acknowledged during his plea colloquy that he had discussed how the guidelines might apply to his case and that he did not need any additional time to talk to his attorney. The factual basis for Count 4 included reference to the fact Movant was in possession of sadomasochistic images. Movant raised no issue with regard to these particular facts during the colloquy and pled guilty. Mr. Peacock had discussed the PSI with Movant after providing him a copy and explained how the guidelines applied to his case.

      b.     <u>Pattern of Sexual Abuse or Exploitation</u> – Movant's claim lacks any reference to a legal reason why this enhancement should not apply. He apparently takes issue with the factual basis for the enhancement. Testimony will be presented that Movant agreed with the strategy of not contesting these facts in the PSI.

      c.     <u>600 or More Images</u> – Movant's claim is contradicted by the transcript of the plea colloquy. Movant acknowledged during his plea colloquy that he had discussed how the guidelines might apply to his case and that he did not need any additional time to talk to his attorney. The facts supporting Count 4 in the PSI included reference to 606 still images and 102 videos depicting minor children, including prepubescent children, engaging in sexually explicit conduct. Movant raised no issue with regard to these particular facts during the colloquy and pled guilty. Mr. Peacock had discussed the PSI with Movant after providing him a copy and explained how the guidelines applied to his case.

      d.     <u>Pattern of Activity Involving Prohibited Sexual Conduct</u> - Movant's claim lacks any reference to a legal reason why this enhancement should not apply. He apparently takes issue with the factual basis for the enhancement. Testimony will be presented that Movant agreed with the strategy of not contesting these facts in the PSI.

### *The Movant's Claims Would Not Have Changed the Result – Lack of Prejudice*

Regarding Ground 2, Movant has not shown a reasonable probability that he would have insisted on going to trial if he were properly advised of the advisory guideline range and his exposure to a life sentence. The record will show that the Court and his counsel did properly advise him regarding the guidelines and his exposure to a life sentence (despite his assertion to the contrary). Under those circumstances, he did choose to plead guilty/no contest and ask for a sentence less than life. He hoped to receive a variance and get less than a life sentence by accepting responsibility to the extent he could.

Regarding Ground 4, objective evidence supported the calculation of the guideline range. The evidence came from the defendant's admissions during the plea colloquy and during the presentation of evidence at the sentencing hearing.

a. <u>Sadomasochistic Images</u> - The objective evidence supported an assessment of 4 points for an offense involving material that portrays sadistic or masochistic conduct or other depictions of violence, pursuant to § 2G.2.2(b)(4). First, Movant agreed, during the plea colloquy for Count 4 (possession of material involving sexual exploitation of minors), that images on devices found in his possession depicted sadomasochistic conduct. (*Cr*DE: 128; p.33-36). He plead *guilty* to Count 4. Movant would certainly have been in the best position to know the nature of what he possessed and viewed. Second, Movant agreed, during the plea colloquy for Count 2 (distribution of material involving sexual exploitation of minors), that the image he distributed depicted a prepubescent female being anally penetrated by an adult male penis as he ejaculated (*Cr*DE: 128; p.33-36). That image would constitute a sadomasochistic image. Third, the United States presented a video during the sentencing hearing that clearly depicted sadistic conduct.

Exhibit 11 was presented to the Court. One of the videos on the CD showed a young, small, prepubescent minor being forcefully penetrated with a large sex toy by a man wearing a mask. Lastly, other evidence collected by law enforcement contains images of sadomasochistic conduct.

  b. <u>Pattern of Sexual Abuse or Exploitation</u> – Objective evidence supported an assessment of 4 points for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, pursuant to § 2G.2.2(b)(4). The Court heard testimony from Det. Sheila LaGrega who provided the factual basis for how the defendant sexually battered his two stepdaughters, based on statements taken from the victims and other evidence (*Cr*DE: 129; p.11-47). Danitz Byrd and Wayne Walker's testimony established that DNA from one of the defendant's stepdaughters was located on a sex toy and that the defendant's semen stains were found on a blanket. Agt. Ray testified that the defendant's phone contained an image of the defendant receiving oral sex from his stepdaughter. The chat messages which are the basis of the enticement charge provided more than enough evidence of a separate pattern of prohibited sexual conduct to support additional assessments. The PSI lawfully includes the assessment of points for both the § 2G.2.2(b)(4) offense characteristics and the Chapter 4, § 4B1.5(b)(1) assessment.

  c. <u>600 or More Images</u> – Objective evidence supports an assessment of 5 points, pursuant to § 2G.2.2(b)(7)(D), because the defendant was in possession of 600 images or more images of child pornography. First, the defendant admitted to as much by during the plea colloquy and pled *guilty* based on those facts (*Cr*DE: 128; p.33-36, 51-52). Each of the videos is the equivalent to 75 still images, pursuant to § 2G.2.2, note 6(A)(B)(ii). Therefore, the total number of images based on the number of still images and videos is 8,256, far in excess of the 600 image threshold. Agt. Brian Ray can testify as to the number videos and still images on the electronic devices possessed by the defendant.

      d.    <u>Pattern of Activity Involving Prohibited Sexual Conduct</u> - Objective evidence supported an assessment of 4 points for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, pursuant to § 4B1.5(b)(1). The Court heard testimony from Det. Sheila LaGrega who provided the factual basis for how the defendant sexually battered his two stepdaughters, based on statements taken from the victims and other evidence (*Cr*DE: 129; p.11-47). Danitz Byrd and Wayne Walker's testimony established that DNA from one of the defendant's step daughters was located on a sex toy and that the defendant's semen stains were found on a blanket  Agt. Ray testified that the defendant's phone contained an image of the defendant receiving oral sex from his step-daughter. The chat messages which are the basis of the enticement charge provided more than enough evidence of a separate pattern of prohibited sexual conduct that would support additional assessments. The PSI lawfully includes the assessment of points for both the § 2G.2.2(b)(4) offense characteristics and the Chapter 4, § 4B1.5(b)(1) assessment.

      **C.**    **List of Exhibits**

1. Draft Presentence Investigation Report (*Cr*DE: 82);
2. Defendant's Objections to the Presentence Report (*Cr*DE: 86);
3. Presentence Investigation Report (Draft) (*Cr*DE: 87);
4. Defendant's Motion for Downward Variance (*Cr*DE: 92);
5. Defendant's Amended Objections to the Presentence Report (*Cr*DE: 95);
6. Transcript of Calendar Call (2/17/16) (*Cr*DE: 126);
7. Transcript of Status Conference (2/19/16) (*Cr*DE: 127);
8. Transcript of Plea (2/22/16) (*Cr*DE: 128);
9. Transcript of Sentencing (Volume 1) (5/16/16) (*Cr*DE: 129);
10. Transcript of Sentencing (Volume 2) (5/23/16) (*Cr*DE: 130);
11. Attorney Notes of Fletcher Peacock
12. Attorney Letters to Defendant from Fletcher Peacock
13. LG D800 Extraction Report (talk.kik.com)
14. LG D800 Extraction Report (messages)
15. Photograph of Cellphone Chats
16. DVD containing CP images & videos extracted from electronic devices presented at sentencing hearing on 5/23/2016

**D.     List of Witnesses**

The Government will call attorney Fletcher Peacock, Office of the Public Defender, 109 North Second Street, Fort Pierce, FL 34950.  The Government anticipates that Mr. Peacock will testify about the following subjects:  (1) his pre-plea discussions with the defendant regarding the law applicable to his case and the prospect of success at trial; (2) his discussions with the defendant regarding the guideline calculations; (3) his pre-sentencing hearing discussions with the defendant, including their discussions about strategy; (4) his discussions with the probation officer regarding the adjustment of the sentencing calculation; (5) his legal analysis of the guideline calculation; and (6) the legal and strategic reasons for abandoning objections to the PSI.

The Government will call Special Agent Brian Ray, Homeland Security Investigations, 505 S. 2nd Street, Suite 100, Fort Pierce, Florida.  The Government anticipates that Agt. Ray will testify about the following subjects: (1) the forensic review of the electronic devices and storage media. (2) introduction of evidence during the sentencing hearing.

                                    Respectfully submitted,

                                    JUAN ANTONIO GONZALEZ
                                  ACTING UNITED STATES ATTORNEY

                                  */s/Daniel E. Funk*
                                  Daniel E. Funk
                                  Assistant United States Attorney
                                  Court ID No. A5501915
                                  500 S. Australian Avenue, Suite 400
                                  West Palm Beach, Florida 33401
                                  Tel: (305) 905-7509
                                  daniel.funk@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on July 16, 2021, on Defendant's counsel of record on the Service List below.

s/*Daniel E. Funk*
Daniel E. Funk
Assistant United States Attorney

## SERVICE LIST

| Daniel E. Funk<br>Assistant U.S. Attorney<br>500 S. Australian Avenue, Suite 400<br>West Palm Beach, Florida 33401<br>305-905-7509<br>daniel.funk@usdoj.gov<br>Attorney for United States | Charles G. White, Esq.<br>1031 Ives Dairy Road, Suite 228<br>Miami, FL 33179<br>305-914-0160<br>cgwhitelaw@aim.com<br>Attorney for Michael E. Harding |
|---|---|