```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                        FORT PIERCE DIVISION

 3                   CASE NO. 15-CR-14057-ROSENBERG

 4

      UNITED STATES OF AMERICA,       .
 5
            Plaintiff,                 .
 6
                 vs.                   .
 7
      MICHAEL HARDING,                 .   Fort Pierce, FL
 8                                     .   February 22, 2016

 9         Defendant.                  .

10
                   CHANGE OF PLEA PROCEEDINGS
11           BEFORE THE HONORABLE ROBIN L. ROSENBERG
                   UNITED STATES DISTRICT JUDGE
12

13

14      APPEARANCES:

15

16      FOR THE PLAINTIFF:       DANIEL FUNK
                                 RUSSELL KILLINGER
17                               United States Attorney's Office
                                 101 S. U.S. Highway 1
18                               Suite 3100
                                 Fort Pierce, FL 34950
19                               305-905-7509

20      FOR THE DEFENDANTS:      FLETCHER PEACOCK, ESQ.
                                 Federal Public Defender's Office
21                               109 North 2nd Street
                                 Fort Pierce, FL 34950
22                               772-489-2123

23      Official Court Reporter:  Pauline A. Stipes
                                 Fort Pierce/West Palm Beach
24                               772-467-2337
                                 HON. ROBIN L. ROSENBERG
25
```

A0386-C

**GOVERNMENT
EXHIBIT**

CASE
NO.   18-CV-14359-RLR

EXHIBIT
NO.   8

 1          THE COURT:  Okay, good morning.  You may be seated.

 2          We are here this morning in a change of plea, U.S.A.

 3   versus Michael Harding, 15-CR-14057.

 4          If we could have all counsel state their appearance

 5   and the appearance of Mr. Harding.

 6          MR. FUNK:  Good morning, Daniel Funk on behalf of the

 7   United States.  I am here with Russell Killinger.

 8          THE COURT:  Good morning.

 9          MR. PEACOCK:  Good morning, Fletcher Peacock here with

10   Mr. Harding, who is here before the Court.

11          THE COURT:  Good morning.

12          I am going to begin by stating all of the matters and

13   the Court's comments and the ultimate basis for the Court's

14   decision to proceed with the plea today was based at the status

15   conference on Friday at 8:30 in the morning, Friday, the 19th,

16   and all of that is incorporated by reference into today's

17   proceeding and will be part of the record upon which the Court

18   is proceeding this morning.  So, I did want to state that.

19          My understanding is we are here for a change of plea

20   to the second superseding indictment that was filed on

21   November 12, 2015, Docket Entry 32, and that this is a plea

22   open to that second superseding indictment and that there will

23   be a plea of guilty as to Counts 1, 2, 3 and 4, and a nolo

24   contendere plea as to Counts 5 and 6.

25          So, with that, let's begin by swearing in the

1    defendant.

2         *(Thereupon, the defendant was duly sworn.)*

3    *BY THE COURT*:

4    *Q.*  Okay.  Good morning, Mr. Harding.

5    *A.*  Good morning.

6    *Q.*  Do you understand that you are now under oath, and that if

7    you answer any of my questions falsely, your answers may later

8    be used against you in another prosecution for perjury or

9    making a false statement?

10   *A.*  Yes, Your Honor.

11   *Q.*  If you would please state your full name?

12   *A.*  Michael Aaron Harding.

13   *Q.*  How old are you?

14   *A.*  28 years old.

15   *Q.*  How far did you go in school?

16   *A.*  Associate's Degree.

17   *Q.*  Do you read and write the English language?

18   *A.*  Yes, I do.

19   *Q.*  Have you ever been treated for addiction to drugs, alcohol

20   or a mental condition of any kind?

21   *A.*  I have been treated for anxiety and depression before.

22   *Q.*  You have been treated for anxiety and depression before?

23   *A.*  Yes.

24   *Q.*  When was that?

25   *A.*  That was several years ago, seven or eight years ago.

Pauline A. Stipes, Official Federal Reporter

Case 2:15-cv-14057-RLR  Document 126  Entered on FLSD Docket 07/03/2016  Page 4 of 58  4

```
 1    Q.   So, the diagnosis as to both anxiety and depression was
 2    seven or eight years ago, and continued to today?
 3    A.   Yes, Your Honor.
 4    Q.   And what are you doing, if anything, or have you been doing
 5    and are you doing, if anything, to treat the anxiety and
 6    depression?
 7    A.   I was prescribed mental health medication.
 8    Q.   How long ago?
 9    A.   Around the same time frame.
10    Q.   Seven to eight years ago?
11    A.   Yes, ma'am.
12    Q.   What medication is that?
13    A.   At the time, it was Zoloft and Klonopin.
14    Q.   Has it changed at all?
15    A.   The medication?
16    Q.   Yes.
17    A.   I don't take anything for either the anxiety or depression.
18    Q.   So, you were taking the medication that you indicated, but
19    you no longer are taking it?
20    A.   Correct, facilities don't provide that kind of medication.
21    Q.   When did you stop taking it?
22    A.   Upon my incarceration.
23    Q.   What was the date of the incarceration?
24    A.   September 22, I believe, 2015.
25    Q.   Is the fact you are not taking the medication affecting
```

1   your state today?

2   A.   No.

3   Q.   Do you believe you are competent to enter into the change

4   of plea today?

5   A.   Yes, Your Honor.

6   Q.   Are you under any medical treatment at the facility where

7   you are being incarcerated now?

8   A.   No, Your Honor.

9   Q.   Have you taken any medication today?

10  A.   No, Your Honor.

11  Q.   Are you now under the influence of any drugs, alcohol or

12  other intoxicants that would affect your understanding of these

13  proceedings?

14  A.   No, Your Honor.

15       THE COURT:   Mr. Peacock, the fact that Mr. Harding had

16  been taking various forms of medication for anxiety and

17  depression approximately seven to eight years ago and is not

18  taking those medications as of approximately September 22,

19  2015; do you have any reason to believe based on your

20  interaction with Mr. Harding that the fact that he is not

21  taking the medication would interfere in any way with his

22  ability to understand what is happening here today and be

23  competent to change his plea today?

24       MR. PEACOCK:   No, ma'am.

25       THE COURT:   Does the Government believe any further

 1   questioning in this area would be necessary as relates to Mr.

 2   Harding's competency to enter the change of plea today?

 3          *MR. FUNK:*  No, Your Honor.

 4   *BY THE COURT*:

 5   *Q.*  Mr. Harding, do you feel you are in full possession of your

 6   faculties at this time?

 7   *A.*  Yes, Your Honor.

 8   *Q.*  Does the fact that you are not taking this medication

 9   affect your ability to think at all?

10   *A.*  No, Your Honor.

11   *Q.*  Are you okay to make this important decision today?

12   *A.*  Yes, Your Honor.

13          *THE COURT:*  And, Mr. Peacock, you believe Mr. Harding

14   is capable of making this important decision today?

15          *MR. PEACOCK:*  Yes, Your Honor.

16   *BY THE COURT*:

17   *Q.*  Mr. Harding, have you received a copy of the second

18   superseding indictment against you, that is the written charges

19   against you in the second superseding indictment?

20   *A.*  Yes, Your Honor.

21   *Q.*  Have you fully discussed the charges with your attorney?

22   *A.*  Yes.

23   *Q.*  Have you had enough time to think about this and talk with

24   your attorney?

25   *A.*  Yes, Your Honor.

1    *Q.*   Are you fully satisfied with your attorney and the advice

2    and representation your attorney has given you in this case?

3    *A.*   I am, Your Honor.

4    *Q.*   Do you know what a felony is?

5    *A.*   Yes, Your Honor.

6    *Q.*   Have you ever pled guilty to a felony before?

7    *A.*   No, Your Honor.

8    *Q.*   Today I must determine whether your offer to plead guilty

9    as to Counts 1 through 4 and your no contest plea as to Counts

10   5 and 6 is done freely and voluntarily, with full knowledge of

11   the rights that you give up by such a plea, and also whether

12   your offer to plead guilty as to the first four counts and no

13   contest as to Counts 5 and 6 is done with a sufficient

14   understanding of the possible consequences of that plea.

15       If at any time you do not understand what I am saying, I

16   want you to stop me so you can consult with your attorney and

17   receive an explanation or so I can explain anything that you

18   don't understand.

19       Will you do that?

20   *A.*   Yes, Your Honor.

21   *Q.*   Have you understood everything so far?

22   *A.*   Yes, Your Honor.

23   *Q.*   Has anyone tried in any way to force you to enter into the

24   plea today or otherwise threaten you?

25   *A.*   No, Your Honor.

Pauline A. Stipes, Official Federal Reporter

1    *Q.*  Has anyone made any promises or assurances of any kind to

2    get you to enter into this plea today, that is, including your

3    guilty pleas as well as your no contest pleas?

4    *A.*  No, Your Honor.

5        *THE COURT:*  Mr. Peacock, are you aware as to whether

6    any promises or assurances have been made to Mr. Harding to get

7    him to enter into the plea today?

8        *MR. PEACOCK:*  There have been none, Your Honor.

9        *THE COURT:*  Has the Government been aware or is the

10   Government aware of promises or assurances of any type made to

11   Mr. Harding to persuade him or otherwise influence him into

12   entering into this plea today?

13       *MR. FUNK:*  No, Your Honor.

14   *BY THE COURT*

15   *Q.*  As I understand it, as we proceed through the change of

16   plea, Mr. Harding, you are going to be entering a plea of

17   guilty as to Counts 1 through 4 and a no contest plea as to 5

18   and 6.  We'll discuss that further.

19       But is that your understanding?

20   *A.*  Yes, Your Honor.

21   *Q.*  Let me ask you as to the first four counts, that is Counts

22   1 through 3, distributing material involving sexual

23   exploitation of minors, and Count 4 -- that is in violation of

24   Title 18 United States Code Section 2252(a)(2), and as to Count

25   4, possession of material involving sexual exploitation of

 1    minors, in violation of Title 18 U.S.C. 2254(a)(4)(B), are you

 2    pleading guilty to those four counts because you are in fact

 3    guilty?

 4    *A.*  Yes, Your Honor.

 5    *Q.*  And as to Count 5, attempt to coerce and entice a minor to

 6    engage in sexual activity, in violation of Section 18 U.S.C. --

 7    18 U.S.C. Section 2422 Subsection B, and Count 6, producing

 8    child pornography, in violation of 18 U.S.C. Section 2251,

 9    subsection A and E, you will be entering a no contest plea,

10    that is, you will not be contesting the facts that the

11    Government will be proffering as to what it says it can prove

12    at trial.

13        Is that correct?

14    *A.*  That's correct.

15    *Q.*  Do you understand the offenses to which you are pleading

16    guilty, and those to which you are pleading no contest, are

17    felony offenses?

18    *A.*  Yes, Your Honor.

19    *Q.*  And do you understand that if your plea is accepted, you

20    will be adjudged guilty of all offenses, not only the offenses

21    as to Counts 1 through 4 that you are pleading guilty to, to

22    the extent the Court accepts the plea, and to the extent the

23    Court accepts the no contest plea as to Counts 5 and 6 and

24    finds that the Government's factual proffer and the elements of

25    the offense to which it says it can prove at trial, should this

1    case have gone to trial, beyond a reasonable doubt, that the

2    Court likewise as to those two counts, if the plea is accepted,

3    will be -- you would be adjudged guilty of those offenses as

4    well.

5         You will be adjudged guilty of all six offenses, do you

6    understand that?

7    A.   Yes.

8    Q.   Do you understand adjudication of guilt as to each and

9    every one of these offenses may deprive you of valuable civil

10   rights, the right to vote, the right to hold public office, the

11   right to serve on a jury and the right to possess any kind of

12   firearm?

13   A.   Yes, Your Honor.

14   Q.   If you were not born in this country, your guilty plea and

15   your no contest plea very likely will affect your right to stay

16   in this country and return to this country, and you may well be

17   deported.

18        Do you understand that?

19   A.   Yes, Your Honor.

20   Q.   Have you had enough time to discuss all of this with your

21   attorney?

22   A.   I have, Your Honor.

23   Q.   Do you understand neither your attorney nor anyone else can

24   predict what would happen with Immigration should Immigration

25   be an issue with you?

1   *A.*  Yes, Your Honor.

2   *Q.*  If you hold any particular licenses, a conviction will

3   cause you to lose them.

4       Do you understand that?

5   *A.*  Yes, Your Honor.

6   *Q.*  Okay, I am going to state what my understanding is, and

7   then I will look to the Government afterwards to confirm what I

8   have said is correct.

9       I want to inform you, Mr. Harding, of the maximum possible

10  penalty provided by law and any mandatory minimum penalty that

11  involves jail, fine or supervised release that you may face as

12  a result of your guilty pleas, should the Court accept them

13  today, as to Counts 1 through 4 and your no contest pleas.

14      I am going to take it count by count.

15      The maximum penalty that you could face as to Counts 1

16  through 3 include five to 20 years imprisonment, $250,000 fine,

17  supervised release of five years to life, a $100 special

18  assessment per count, so Counts 1 through 3, that would be a

19  $300 special assessment as to those three counts, although it

20  actually notes a $5,000 special assessment unless indigent.

21          *THE COURT:*  Let me ask the Government to clarify as to

22  Counts 1 through 3.

23          *MR. FUNK:*  To clarify the special assessment, Your

24  Honor?

25          *THE COURT:*  Yes.

1          *MR. FUNK:*  $5,000 per count.

2          *THE COURT:*  Not $100?

3          *MR. FUNK:*  No, the special assessment is a recent

4    modification to the statute in child pornography.

5          *THE COURT:*  $100 or in addition to?

6          *MR. FUNK:*  In addition to.

7          *THE COURT:*  Am I correct as to the maximum penalty?

8          *MR. FUNK:*  You are.

9          *THE COURT:*  To clarify, a $100 special assessment as

10   to Counts 1 to 3, that is $300, and a $5,000 special

11   assessment -- did you say per count or total?

12         *MR. FUNK:*  Per count.

13         *THE COURT:*  In addition, a $5,000 special assessment

14   given the nature of the charges unless you are deemed indigent.

15   *BY THE COURT*:

16   *Q.*  Do you understand those are your maximum penalties as to

17   Counts 1 through 3?

18   *A.*  Yes.

19   *Q.*  That is distributing material involving exploitation of

20   minors.

21      Now, as to Count 4, possession of material involving sexual

22   exploitation of minors, in violation of 18 U.S.C.

23   2252(a)(4)(B), the maximum penalty that you face under that

24   statute is 20 years imprisonment, $250,000 fine, supervised

25   release of five years to life, a $100 special assessment, and a

1    $5,000 special assessment unless indigent.

2              THE COURT:  Is that correct, from the Government?

3              MR. FUNK:  Yes.

4    BY THE COURT:

5    Q.  Do you understand that, Mr. Harding?

6    A.  Yes, Your Honor.

7    Q.  As to Count 5, the maximum penalty you face for attempt to

8    coerce and entice a minor to engage in sexual activity, in

9    violation of 18 U.S.C. Section 2422(b), is ten years to life

10   imprisonment, $250,000 fine, supervised release of five years

11   to life, $100 special assessment, and a $5,000 special

12   assessment unless indigent.

13             THE COURT:  Is that correct, from the Government?

14             MR. FUNK:  Yes.

15   BY THE COURT:

16   Q.  Do you understand that, Mr. Harding?

17   A.  Yes, Your Honor.

18   Q.  Okay, as to Count 6, producing child pornography, in

19   violation of 18 U.S.C. 2251(a) and (e), the maximum penalty is

20   15 years to 30 years, $250,000 fine, supervised release of five

21   years to life and a special assessment of $100.

22             THE COURT:  Is that correct, from the Government?

23             MR. FUNK:  Yes.

24   BY THE COURT:

25   Q.  Do you understand that, Mr. Harding?

1    *A.*  Yes, Your Honor.

2          THE COURT:  Maybe the Government can address the issue

3    so Mr. Harding understands as to whether these counts could

4    run -- must run concurrently or consecutively.  If the

5    Government could address that so I can ensure that Mr. Harding

6    understands that.

7          MR. FUNK:  The counts could run consecutively, there

8    is no statutory requirement that they could run consecutive.

9          THE COURT:  Each count could run consecutive to each

10   and every other count?

11         MR. FUNK:  Correct.

12         THE COURT:  Counts 1 to 3, when I said five to 20

13   years, that would be as to Count 1.  And Count 2, it would also

14   be five to 20 years.  It is for each and every count?

15         MR. FUNK:  Correct.

16   *BY THE COURT*:

17   *Q.*  Mr. Harding, I want to make sure you understand the concept

18   of concurrent and consecutive.

19        As the Government just explained, and we are talking about

20   maximum penalties, but you need to be aware of what the maximum

21   penalties are as you consider entering into your change of plea

22   here today, that the maximum penalty as to each and every count

23   can run consecutive with one another, that is back to back with

24   one another.

25        So that you could receive the maximum penalty as to Count

Pauline A. Stipes, Official Federal Reporter

1    1, which would run back to back with the maximum penalty for

2    Count 2, which would run back to back with the maximum penalty

3    to Count 3, and the same for Counts 4 and 5 and 6.

4         Do you understand that concept?

5    A.  Yes, Your Honor.

6    Q.  Do you need any further explanation from the Court or any

7    time to confer with your attorney about the idea that they can

8    run consecutive to one another?

9    A.  No, Your Honor.

10   Q.  Okay.

11        Now, if as part of your sentence, you do -- you are placed

12   on supervised release, there are conditions that are placed as

13   part of the supervised release.

14        Do you understand that if you are placed on supervised

15   release and you have conditions imposed upon you, that if you

16   violate any of those conditions of supervised release you could

17   be given additional time in prison, that is above and beyond

18   what the Court has articulated as to the maximum penalties

19   associated with each and every count?

20   A.  Yes, Your Honor.

21             THE COURT:  And just to be clear, from the Government,

22   the Defendant does not face any mandatory minimum sentence, or

23   does he?

24             MR. FUNK:  There is, Your Honor.

25             THE COURT:  Could you articulate what the mandatory

 1    minimum is?

 2            MR. FUNK:  With regard to Count 1, five years; with

 3    regard to Count 2, five years; with regard to Count 3,

 4    mandatory five years; with regard to Count 5, minimum mandatory

 5    ten years; Count 6, the minimum mandatory is 15 years.

 6            THE COURT:  Did you say 4?

 7            MR. FUNK:  There is no mandatory minimum as to Count

 8    4.

 9            THE COURT:  Okay.

10    BY THE COURT:

11    Q.  So, do you understand, Mr. Harding, even though there is

12    the range of, for example, Counts 1 through 3, five years to 20

13    years in Counts 1, 2, 3, that the law requires that there is a

14    mandatory minimum sentence of five years as to Counts 1, 2, 3?

15        Do you understand that concept?

16    A.  Yes.

17    Q.  Do you also understand there is a mandatory minimum of ten

18    years as to Count 5?

19    A.  Yes, Your Honor.

20    Q.  Do you understand there is a mandatory minimum sentence of

21    ten years as to Count 6?

22    A.  Yes.

23    Q.  Do you need additional time to speak to your attorney about

24    that?

25    A.  No.

1    MR. FUNK:  With regard to supervised release, there is

2    a minimum mandatory, five years as to Counts 1 through 3, 4, 5

3    and 6.  So all the counts require a five year minimum mandatory

4    for supervised release.

5         THE COURT:  Okay.

6    BY THE COURT:

7    Q.  Mr. Harding, do you understand there is a minimum of five

8    years as to each of the counts for the period of supervised

9    release with respect to any term of incarceration?

10   A.  Yes, Your Honor.

11   Q.  Do you have any questions about that?

12   A.  No.

13   Q.  Do you need additional time to speak with your attorney

14   about that?

15   A.  No, Your Honor.

16   Q.  Now, do you understand when the Probation Office is

17   determining your recommended sentencing range, which we will

18   do, and we will have that prior to sentencing should the Court

19   accept the plea today, that the Probation Office will use

20   relevant conduct to make that determination, meaning that it

21   can include conduct occurring under any dismissed counts in

22   determining the Sentencing Guideline range?

23        THE COURT:  I don't believe there are any dismissed

24   counts in this case; is that correct?

25        MR. FUNK:  Correct.

Pauline A. Stipes, Official Federal Reporter

 1   *BY THE COURT*:

 2   *Q.*  I want to make sure you understand that as well.

 3   *A.*  Yes, Your Honor.

 4   *Q.*  Okay.

 5          *THE COURT:*  With respect to the Victim's Restitution

 6   Act, has the Government assessed that issue at this time?

 7          *MR. FUNK:*  Not at this time.  We are seeking out what

 8   restitution might be owed and what victims might be identified.

 9          *THE COURT:*  Okay.

10   *BY THE COURT*:

11   *Q.*  Mr. Harding, in addition to the maximum penalties the Court

12   has gone through with respect to each and every count, in

13   addition to that, the Court may also order -- be required to

14   order under the Mandatory Restitution Act that you make

15   restitution for the offense under 18, 3771(a)(6) and 62(a).

16       Do you understand that?

17   *A.*  Yes.

18          *THE COURT:*  Is there any forfeiture involved?

19          *MR. FUNK:*  There is, Your Honor.  We haven't discussed

20   it, but I would look to the Defense to agree to the forfeiture

21   to the items in the second superseding indictment.

22          *MR. PEACOCK:*  May I have a minute with the Government?

23          *THE COURT:*  Sure.

24          *MR. PEACOCK:*  Your Honor, thank you.  We have no

25   objection to the forfeiture.

19

```
 1              THE COURT:  Okay.  Where are the items that are being
 2      forfeited outlined, that you are seeking?
 3              MR. FUNK:  They are listed within the second
 4      superseding indictment.
 5              THE COURT:  Page four, Count 6?
 6              MR. FUNK:  One PM width attache thumb drive, one XRJ
 7      model Mercury thumb drive, one cellular telephone and one
 8      Samsung cellular phone.
 9              THE COURT:  All right.
10      BY THE COURT:
11      Q.  Mr. Harding, do you understand the Court may require you to
12      forfeit certain items the Government outlined in Count 6 of the
13      second superseding indictment?
14      A.  Yes, Your Honor.
15              MR. PEACOCK:  Your Honor, if I may, in not contesting
16      forfeiture, Mr. Harding does not waive his rights to challenge
17      the possession of the items initially in future proceedings.
18              THE COURT:  Okay.
19              MR. PEACOCK:  Obviously, we'll be waiving that in this
20      case, but in any future case Mr. Harding reserves the right if
21      appropriate to challenge -- he is not abandoning those, we are
22      saying the Government has the power to forfeit.
23              THE COURT:  Okay, is that the Government's
24      understanding as well?
25              MR. FUNK:  Yes, Your Honor.
```

| | |
|---|---|
| 1 | THE COURT: Okay. |
| 2 | BY THE COURT: |
| 3 | Q. In addition to all of the other penalties that the Court |
| 4 | has addressed, Mr. Harding, do you understand the Court may |
| 5 | order notice to the victims of the offense under Section 3555? |
| 6 | A. Yes, Your Honor. |
| 7 | Q. So, do you understand that everything we have just gone |
| 8 | through, that all of these are possible consequences of your |
| 9 | plea here today? |
| 10 | A. Yes, Your Honor. |
| 11 | Q. Now, your sentence will be determined by a combination of |
| 12 | the advisory Sentencing Guidelines, possible departures and |
| 13 | variances from the Sentencing Guidelines and other statutory |
| 14 | factors set forth under 18 U.S.C. 3553(a). |
| 15 | Have you and your attorney discussed how the advisory |
| 16 | Sentencing Guidelines might apply to your case? |
| 17 | A. Yes, Your Honor. |
| 18 | Q. Do you need any additional time to discuss this with your |
| 19 | attorney? |
| 20 | A. No, Your Honor. |
| 21 | Q. Neither the Court nor anyone else will be able to determine |
| 22 | with certainty the advisory guideline range for your case until |
| 23 | after the Pre-Sentence Report has been completed and you and |
| 24 | the Government have had an opportunity to challenge the |
| 25 | reported facts and the application of the guidelines |

Case 2:15-cv-14357-RLR  Document 128  Entered on FLSD Docket 07/05/2016  Page 21 of 58

```
 1    recommended by the Probation Officer.

 2         Do you understand that?

 3    A.  Yes, Your Honor.

 4    Q.  So, the sentence I ultimately impose may be different from

 5    any estimate your attorney may have given you.  It may be

 6    higher or lower.

 7         Do you understand that?

 8    A.  Yes, Your Honor.

 9    Q.  If I give you a higher sentence than you are hoping for

10    that is a chance by your plea today and would not be grounds to

11    withdraw your guilty plea.  Do you understand that?

12    A.  Yes, Your Honor.

13    Q.  For example, you heard what the maximum penalties are for

14    each and every offense, and you heard each and every penalty

15    could run back to back to each and every other offense, that is

16    for all six counts the penalty could run consecutively, as I

17    described that to you.

18         If that were a sentence that the Court imposed, and if that

19    sentence was higher than you expected, maybe even higher than

20    what the guideline range is, higher than what your attorney has

21    indicated may be a likely outcome, do you understand that that

22    would not be a basis for you to seek to withdraw your guilty

23    plea?

24    A.  Yes, Your Honor.

25    Q.  And should the advisory guideline range, for example, show
```

Pauline A. Stipes, Official Federal Reporter

Case 2:15-cr-14057-RLR   Document 128   Entered on FLSD Docket 07/05/2016   Page 22 of 58

22

1    a calculation of a guideline that suggests life imprisonment

2    for your pleas of guilty to Counts 1 through 4, and no contest

3    plea as to 5 and 6, and that is not something you are expecting

4    or maybe did not discuss with your attorney, but if the

5    guidelines show, and they may very well show that the sentence

6    imposed under the guidelines is a life sentence, do you

7    understand that that is part of your plea here today and that

8    would not be a basis for you to withdraw your plea at any later

9    time?

10   *A.*  Yes, Your Honor.

11   *Q.*  Now, after your initial guideline range has been

12   determined, the Court does have the authority in some

13   circumstances to depart upward or downward from that range and

14   examine other statutory sentencing factors under 3553(a) that

15   may result in a sentence that is either more or less than the

16   advisory guideline sentence.

17       Again, if I give you a higher sentence than you are hoping

18   for, that is a chance you take by your plea today and would not

19   be grounds to withdraw your guilty plea.

20       Do you understand that?

21   *A.*  Yes, Your Honor.

22   *Q.*  Do you understand parole has been abolished, and if you are

23   sentenced to prison, you will not be released on parole?

24   *A.*  Yes, Your Honor.

25   *Q.*  Do you understand the actual sentence you serve in custody

Pauline A. Stipes, Official Federal Reporter

Case 2:15-cr-14057-RLR   Document 128   Entered on FLSD Docket 07/05/2016   Page 23 of 58
23

1    is between you and the Bureau of Prisons?

2    A.   Yes, Your Honor.

3    Q.   If the Bureau of Prisons makes you serve your entire

4    sentence, that is a part of your plea and would not be grounds

5    for you to withdraw your guilty plea.

6         Do you understand that?

7    A.   Yes, Your Honor.

8    Q.   Do you understand you do have the right to plead not guilty

9    to any offense charged against you and persist in that plea?

10   A.   Yes, Your Honor.

11   Q.   Do you understand you have a right to trial by jury?

12   A.   Yes, Your Honor.

13   Q.   Do you understand at a trial you would be presumed innocent

14   and the Government would have to prove your guilt beyond a

15   reasonable doubt?

16   A.   Yes.

17   Q.   Do you understand you have a right to defense counsel

18   appointed at trial and every other stage of the proceeding?

19   A.   Yes.

20   Q.   You have a right to confront the witnesses and see and hear

21   them and cross-examine them in your defense?

22   A.   Yes, Your Honor.

23   Q.   Do you understand you have a right to compel the attendance

24   of witnesses at a trial?

25   A.   Yes.

 1   *Q.*  Do you understand if you decided not to testify or put on

 2   any evidence at all, these facts could not be used against you?

 3   *A.*  Yes, Your Honor.

 4   *Q.*  Do you understand you also have a right to testify at trial

 5   if you wish to do so?

 6   *A.*  Yes, Your Honor.

 7   *Q.*  By pleading guilty and by pleading no contest, guilty to

 8   Counts 1 through 4 and no contest as to 5 and 6, if I accept

 9   your plea, there will be no trial, and you will have given up

10   your right to trial as well as all the other rights we

11   discussed.

12        Do you understand that?

13   *A.*  Yes, Your Honor.

14   *Q.*  Okay.

15        At this point, I am going to ask the Government -- I will

16   ask you to listen very carefully, Mr. Harding, because I will

17   turn to you after the Government has spoken.

18        What I am going to ask the Government to do right now is to

19   summarize the second superseding indictment.

20        In doing so, I am going to ask the Government to explain

21   the essential elements of the offense for each and every count,

22   each and every charge, all six counts contained within the

23   superseding and second superseding indictment.

24        These are the elements of the offense which the Government

25   would have to prove beyond a reasonable doubt, and then I am

```
 1    going to turn to you, Mr. Harding, to make sure you understand

 2    that these are both the essential elements of each offense that

 3    the Government would have to prove beyond a reasonable doubt,

 4    and also, the facts that the Government says it can prove that

 5    support the essential elements such that if the case went to

 6    trial, the Government would be able to prove this beyond a

 7    reasonable doubt.

 8         THE COURT:  So, why don't we start with the -- I think

 9    the way you have broken it out, you have broken out each of the

10    counts separately.

11         Why don't we take it count by count, understanding

12    that the first three counts all contain the same elements of

13    the offense and same factual basis.

14         Let's start with Counts 1, 2 and 3, essential elements

15    and factual basis.

16         MR. FUNK:  Before we move on to that, one last thing

17    with regard to notice of the Defendant, that he understands

18    conviction for this offense will result in substantial

19    restrictions where he may live, work and associate.

20         THE COURT:  Okay.

21    BY THE COURT:

22    Q.   Do you understand that, Mr. Harding?

23    A.   Yes.

24    Q.   Do you have any questions about that?

25    A.   No.
```

Pauline A. Stipes, Official Federal Reporter

1   *Q.*  Do you need additional time to confer with your attorney

2   about that?

3   *A.*  No, Your Honor.

4        *MR. FUNK:*  Regarding Counts 1, 2 and 3, the elements

5   of the offense for distributing material involving the sexual

6   exploitation of minors, the prosecution would prove the

7   following facts or elements to convict the Defendant of

8   distributing material involving sexual exploitation of minors

9   as alleged in Counts 1, 2 and 3 of the second superseding

10  indictment.

11       First, the Defendant knowingly distributed a visual

12  depiction; second, the depiction was shipped or transported in

13  interstate or foreign commerce by any means, including by

14  computer; third, producing the visual depiction involved using

15  a minor engaged in sexually explicit conduct; four, the

16  depiction is of a minor engaged in sexually explicit conduct

17  and; five, the Defendant knew that at least one performer in

18  the visual depiction showed the minor engaged in sexually

19  explicit conduct.

20       To "distribute" something means to deliver or transfer

21  possession of it to someone else, with or without any financial

22  interest in the transaction.

23       "Minor" means any person younger than 18 years old.

24       "Interstate or foreign commerce" is the movement of

25  property between different states or between the United States

Pauline A. Stipes, Official Federal Reporter

1    and anyplace outside the United States.  The transmission of

2    information through the internet is in or affecting interstate

3    or foreign commerce.

4            The term "state" means a State of the United States,

5    the District of Columbia or any commonwealth, territory or

6    possession of the United States.

7            The term "computer" includes any high-speed data

8    processing device that can perform logical, arithmetic or

9    storage functions, including any data storage facility or

10   communications facility that is directly related to or operates

11   in conjunction with the device.  It does not include an

12   automated typewriter or typesetter, a portable hand-held

13   calculator, or similar devices which are limited in function to

14   word processing or mathematical calculations.

15           The term "sexually explicit conduct" means actual or

16   simulated:  Sexual intercourse, including genital-genital,

17   oral-genital, anal-genital or oral-anal contact, whether

18   between persons of the same or opposite sex; bestiality;

19   masturbation; sadistic or masochistic abuse or; lascivious

20   exhibition of the genitals or pubic area of any person.

21           "Lascivious exhibition" means indecent exposure of the

22   genitals or pubic area, usually to incite lust.  Not every

23   exposure is a lascivious exhibition.

24           To decide whether a visual depiction is a lascivious

25   exhibition, the jury would consider the context and setting in

1    which the genitalia or pubic area was displayed.

2          Factors the jury may consider are the overall content

3    of the material; whether the focal point of the visual

4    depiction is on the minor's genitalia or pubic area; whether

5    the setting of the depiction appears to be sexually inviting or

6    suggestive, for example, in a location or in a pose associated

7    with sexual activity; whether the minor appears to be displayed

8    in an unnatural pose or inappropriate attire; whether the minor

9    is partially clothed or nude.

10         Whether the depiction appears to convey sexual coyness

11   or an apparent willingness to engage in sexual activity and;

12   whether the depiction appears to have been designed to elicit a

13   sexual response in the viewer.

14         A visual depiction need not have all of these factors

15   to be a lascivious exhibition.

16         The term "visual depiction" includes undeveloped film

17   and videotape and data stored on computer media or by other

18   electronic means that can be converted into a visual image.

19         The internet, telephones, and cellular telephones are

20   facilities of interstate commerce.

21         The factual basis for Count 1.  The Defendant, Michael

22   Harding, on July 23, 2015, at approximately 9:11 a.m., using

23   the screen name "desthfromabovee",

24   D-E-S-T-H-E-F-R-O-M-A-B-O-V-E-E, posted two images of child

25   pornography in the Kik Messenger chat room titled

Pauline A. Stipes, Official Federal Reporter

1   #toddlerfuck, T-O-D-D-L-E-R-F-U-C-K.  One of the images posted

2   to the chat room depicts a preteen female, under the age of 18,

3   performing oral sex on an adult male.  The other image posted

4   to the chat room depicts a preteen girl, under the age of 18,

5   reclined on a couch exposing her vagina to the camera.

6        Both images were downloaded from the internet by a

7   federal agent located in Wilmington, Delaware.  The images were

8   posted while Michael Harding was in the Southern District of

9   Florida.  The images posted over the internet.

10        THE COURT:  Was the screen name

11   D-E-S-T-H-F-R-O-M-A-B-O-V-E, or another E at the end?

12        MR. FUNK:  Two E's, Your Honor.

13        THE COURT:  All right.

14        MR. FUNK:  The factual basis for Count 2.  The

15   Defendant, Michael Harding, on July 26, 2015, at approximately

16   6:21 a.m., using the screen name "desthfromabovee", posted one

17   video of child pornography in the Kik Messenger chat room

18   titled #toddlerfuck.  The file uploaded to the chat room over

19   the internet depicts a prepubescent female being anally

20   penetrated by an adult male penis as he ejaculates.

21        The image was posted while Michael Harding was in the

22   Southern District of Florida, and as was the case in Count 1,

23   an image downloaded by a Federal agent who was in Delaware.

24        Factual basis for Count 3.  The Defendant, Michael

25   Harding, on August 4, 2015, at approximately 6:49 a.m., using

Pauline A. Stipes, Official Federal Reporter

| | |
|---|---|
| 1 | the screen name "desthfromabovee", posted one video of child |
| 2 | pornography in the Kik Messenger chat room titled #toddlerfuck. |
| 3 | The file uploaded to the chat room over the internet is |
| 4 | 37 seconds long and shows an adult male rubbing his penis on |
| 5 | the vagina and anus of a preschool aged female.  The girl in |
| 6 | the video is prepubescent and under 12 years of age. |
| 7 | The image was posted while Michael Harding was in the |
| 8 | Southern District of Florida.  The image was downloaded from |
| 9 | the internet by an undercover agent in Delaware. |
| 10 | *BY THE COURT*: |
| 11 | *Q.*  As to Counts 1, 2 and 3, Mr. Harding, do you understand, as |
| 12 | the Government outlined in the beginning of its recitation, |
| 13 | that those are the essential elements of the crimes that you |
| 14 | are charged with in Counts 1, 2 and 3? |
| 15 | *A.*  Yes, Your Honor. |
| 16 | *Q.*  Do you understand if this case went to trial, the |
| 17 | Government would have had to prove each essential element of |
| 18 | the crime beyond a reasonable doubt? |
| 19 | *A.*  Yes, Your Honor. |
| 20 | *Q.*  When you plead guilty, you give up your right to have the |
| 21 | Government prove each essential element of the crime beyond a |
| 22 | reasonable doubt. |
| 23 | Do you understand that? |
| 24 | *A.*  Yes, Your Honor. |
| 25 | *Q.*  When you plead guilty, you give up any defenses, and there |

 1  may be a number, but you give them up.

 2      Do you understand that?

 3  *A.*  I do.

 4  *Q.*  Have you spoken with your attorney about possible defenses

 5  and the chances of winning at trial?

 6      My question relates to Counts 1, 2 and 3.  Have you had

 7  enough time to speak with your attorney about possible defenses

 8  and your chances of winning at trial on Counts 1, 2 and 3?

 9  *A.*  Yes.

10  *Q.*  Following the Government's recitation of the essential

11  elements of Counts 1, 2 and 3, the Government summarized the

12  facts -- factual basis for each of those counts and proffered

13  to the Court that it believes it could prove all of the facts,

14  and that the facts contain the essential elements beyond a

15  reasonable doubt.

16      Do you understand the Government says it can prove all of

17  these facts to support Counts 1, 2 and 3 if this case went to

18  trial?

19  *A.*  Yes.

20          *THE COURT:*  Mr. Peacock, do you take any exception to

21  the facts summarized by Mr. Funk?

22          *MR. PEACOCK:*  No, ma'am.

23          *THE COURT:*  Does the -- Mr. Peacock, does the

24  Defendant agree if this case went to trial, the Government

25  could have proved what it says it could have proven beyond a

 1    reasonable doubt?

 2           MR. PEACOCK:  We agree the Government could have shown

 3    a prima facie case and the Court would have sent it to a jury.

 4           THE COURT:  You agree that if the case went to trial,

 5    I would have sent it to the jury?

 6           MR. PEACOCK:  Yes.

 7           THE COURT:  Mr. Peacock, do you agree the factual

 8    recitation contained the essential elements of the crimes in

 9    Counts 1, 2 and 3?

10           MR. PEACOCK:  Yes, ma'am.

11           THE COURT:  Okay.

12           I do find the facts are sufficient to establish the

13    crimes charged in Counts 1 through 3, distributing material

14    involving sexual exploitation of minors, in violation of 18

15    U.S.C. Section 2252(a)(2) and (b)(1).

16           If I could have the Government set forth the elements

17    of Count 4, possession of material involved in sexual

18    exploitation of minors, and the factual basis for Count 4.

19           MR. FUNK:  Yes, Your Honor.  With regard to Count 4,

20    the definitions of the terms as set out in Counts 1, 2 and 3

21    also apply to Count 4 with regard to the definition of minor,

22    interstate or foreign commerce, state, computer, sexually

23    explicit conduct and lascivious exhibitions.

24    BY THE COURT:

25    Q.  Do you understand that, Mr. Harding?

Pauline A. Stipes, Official Federal Reporter

 1    *A.*  Yes.

 2              *MR. FUNK:*  The prosecution would prove the following

 3    facts or elements to convict the Defendant of possessing any

 4    matter involving sexual exploitation of minors as alleged in

 5    Count 4 of the second superseding indictment.

 6              First, the Defendant knowingly possessed a matter

 7    containing a visual depiction; second, the depiction was

 8    shipped or transported in or affecting interstate or foreign

 9    commerce by any means, including computer, or that the matter

10    containing the depiction was produced using materials that have

11    been shipped or transported in or affecting interstate or

12    foreign commerce; third, producing the visual depiction

13    involved using a minor engaged in sexually explicit conduct;

14    four, the depiction is of a minor engaged in sexually explicit

15    conduct and; five, the Defendant knew that at least one

16    performance in the visual depiction was a minor and knew that

17    the depiction showed the minor engaged in sexually explicit

18    conduct.

19              The factual basis:  The Defendant, Michael Harding, on

20    September 22, 2015, did knowingly possess matters in and

21    affecting interstate and foreign commerce containing visual

22    depictions that involved the use of a minor engaged in sexually

23    explicit conduct.

24              On September 22, 2015, a search warrant was executed

25    at the residence of Michael Harding located in Port St. Lucie,

1    Florida, in the Southern District of Florida.  A PNY thumb

2    drive was located in a gun case within a closet inside the

3    bedroom of Michael Harding's home.  The PNY thumb drive

4    contained 606 still images and 102 videos depicting minor

5    children, including prepubescent children, engaging in sexually

6    explicit conduct.  Some of the images also depict

7    sadomasochistic conduct.

8            One or more of the images discovered on the PNY thumb

9    drive were produced outside the State of Florida and were

10   subsequently distributed over the internet before the Defendant

11   possessed them.

12           An LG-D800 cellular telephone registered to Michael

13   Harding was discovered in a nightstand next to his bed in the

14   bedroom.  It was manufactured in Korea and was shipped and

15   transported in interstate and foreign commerce prior to

16   September 22, 2015.

17           A forensic examination of the LG-D800 cellular

18   telephone revealed the presence of nine videos involving the

19   use of minors engaged in sexually explicit conduct, including

20   images uploaded to the Kik Messenger chat room #toddlerfuck" by

21   user "desthfromabovee" on July 26, 2015 and August 4, 2015.

22   *BY THE COURT*:

23   *Q.*  Mr. Harding, do you understand each of the essential

24   elements of the crime set forth in the second superseding

25   indictment in Count 4, that is possession of material involving

Pauline A. Stipes, Official Federal Reporter

1    sexual exploitation of minors, in violation of 18 U.S.C.

2    2252(a)(4)(B)?

3    A.  Yes, Your Honor.

4    Q.  Do you understand that if this case went to trial, the

5    Government would have had to prove each of the essential

6    elements in Count 4 beyond a reasonable doubt?

7    A.  Yes.

8    Q.  Do you understand when you plead guilty, you give up your

9    right to have the Government prove the elements beyond a

10   reasonable doubt?

11   A.  Yes.

12   Q.  When you plead guilty you give up all the defenses, and

13   there may be a number of defenses you do have, but you do give

14   them up by pleading guilty.

15       Do you understand that?

16   A.  Yes.

17   Q.  Have you had a chance to speak with your attorney about the

18   possible chances of winning at trial as to Count 4?

19   A.  Yes.

20   Q.  Do you similarly understand, Mr. Harding, the Government

21   went on to give the factual basis for the charge of Count 4 in

22   the second superseding indictment?

23       Do you understand the Government says it could prove those

24   facts beyond a reasonable doubt if the case went to trial?

25   A.  Yes.

 1          THE COURT:  Mr. Peacock, do you take any exception to

 2   the facts summarized in Count 4?

 3          MR. PEACOCK:  No objection, Your Honor.

 4          THE COURT:  Mr. Peacock, does Mr. Harding agree that

 5   if this case went to trial, the Government could have proven

 6   what it said in the proffer?

 7          MR. PEACOCK:  We agree the Government could have shown

 8   a prima facie case in which Your Honor would have sent the case

 9   to the jury.

10          THE COURT:  You stipulate had the case gone to trial,

11   I would have sent the case to the jury?

12          MR. PEACOCK:  Yes.

13          THE COURT:  Do you understand the factual recitation

14   contains the essential elements of the crime of Count 4?

15          MR. PEACOCK:  Yes.

16          THE COURT:  I find the facts are sufficient to

17   establish the crime charged in Count 4, possession of material

18   involving sexual exploitation of minors, in violation of 18

19   U.S.C. Section 2252(a)(4)(B).

20          If the Government could proceed as to the elements of

21   the offense and factual basis for Count 5.

22          MR. FUNK:  Yes, Your Honor.  The elements for the

23   offense charged in Count 5, attempt to coerce and entice a

24   minor to engage in sexual activity, is as follows.

25          The prosecution would be prepared to prove the

1    following facts or elements to convict the Defendant of

2    attempted coercion or enticement of a minor engaged in sexual

3    activity:

4           The Defendant knowingly persuaded, induced, enticed or

5    coerced an individual to engage in sexual activity; second, the

6    Defendant used a computer or other interstate facility to do

7    so; third, when the Defendant did these acts the individual was

8    less than 18 years old; fourth, one of the individuals engaging

9    in the sexual activity could have been charged with a criminal

10   offense under Florida law.

11          As a matter of law, the following acts are crimes

12   under Florida law:

13          Sexual Battery in violation of Florida Statute,

14   Section 794.011, Subsection 2, small a.  A person 18 years of

15   age or older who commits sexual battery upon a person under 12

16   years of age commits a capital felony.

17          Lewd or Lascivious Battery, in violation of Florida

18   Statute, Section 800.04 subsection small a, subsection 2.  A

19   person commits lewd or lascivious battery by encouraging,

20   forcing or enticing any person less than 16 years of age to

21   engage in sadomasochistic abuse, sexual bestiality.

22   Prostitution or any other act involving sexual activity.

23          This is a charge of attempt.  The prosecution needs to

24   prove the following facts or elements to convict the Defendant

25   of attempt:

Pauline A. Stipes, Official Federal Reporter

1          One, that the Defendant knowingly intended to commit

2     the crime of enticement of a minor to engage in sexual

3     activity; and two, the Defendant's intent was strongly

4     corroborated by his taking a substantial step toward committing

5     the crime.

6          A "substantial step" is defined as an important action

7     leading up to the committing of an offense, not just an

8     inconsequential act.  It must be more than simply preparing.

9     It must be an act that would normally result in committing the

10    offense.

11         As used in this case, "induce" means to stimulate the

12    occurrence of or to cause.

13         A cellular telephone and the internet is a facility of

14    interstate commerce.

15         The Defendant need not communicate directly with a

16    minor; it is sufficient if the Defendant induces or attempts to

17    induce the minor via an adult intermediary.

18         The Government does not have to prove the existence of

19    or identity of a specific minor victim.  A fictitious minor

20    will suffice so long as the Defendant understood and believed

21    that a minor was involved.

22         Count 5, the defendant, Michael Harding, between

23    August 12, 2015 and September 10, 2015, using a facility and

24    means of interstate commerce, including transmissions by

25    computer on the internet, knowingly attempted to persuade,

1    induce, entice or coerce a person under 18 years of age to

2    engage in sexual activity for which any person could be charged

3    with a criminal offense.

4         Michael Harding, between August 12, 2015 and

5    September 10, 2015, engaged in chat conversations with a single

6    individual having the Kik Messenger screen name

7    "daddydearaimee" and the Skype screen name "Mel M".

8         The text conversations occurred on the Kik Messenger

9    application, and the Skype application, on Michael Harding's

10   LG-D800 cell phone and Samsung cell phone.  The person with

11   whom Michael Harding was having the conversation, hereinafter

12   referred to as "daddydearaimee", told Michael Harding that he

13   had a seven year old daughter and a 12 year old daughter.

14   "daddydearaimee" sent Michael Harding non-nude pictures of two

15   girls he stated were his minor children.  The two girls shown

16   in the images are clearly minor females.

17        "daddydearaimee" claimed he had performed sex acts on

18   both of his own minor children.  Michael Harding stated that he

19   had previously engaged in sexual acts with his nine year old

20   stepdaughter.

21        Michael Harding initiated a conversation about

22   exchanging their minor children for the purpose of engaging in

23   sexual acts.  Michael Harding graphically described the sex

24   acts he had performed on his stepdaughter.  Michael Harding

25   sent "daddydearaimee" non-nude images of both of his

1  stepdaughters showing their bodies, without showing their

2  faces.  One of the images showed the face of Michael Harding's

3  nine year old stepdaughter, the one that Michael Harding

4  proposed swapping for sex.

5      Michael Harding provided real biographical information

6  about himself, including his age, residence and the composition

7  of his family.  He had detailed conversations with

8  "daddydearaimee" regarding where they would meet and how

9  Michael Harding would explain to his wife why he was traveling

10  alone with his nine year old stepdaughter.

11      In carrying on these conversations, Michael Harding

12  did attempt to entice the minor child of "daddydearaimee" to

13  engage in sexual acts that would constitute a violation of

14  Florida law.

15      THE COURT:  Okay.

16  BY THE COURT:

17  Q.  Mr. Harding, first, do you understand that the Government

18  first began by outlining all of the essential elements that it

19  would need to prove beyond a reasonable doubt for attempted --

20  attempt to coerce and entice a minor to engage in sexual

21  activity as set forth in Count 5, in violation of 18 U.S.C.

22  Section 2422(b)?

23      Do you understand those were the essential elements of the

24  crime?

25  A.  Yes, Your Honor.

Pauline A. Stipes, Official Federal Reporter

1    *Q.*  Do you understand if this case went to trial, the

2    Government would have had to prove each essential element of

3    the crime in Count 5 beyond a reasonable doubt?

4    *A.*  Yes, Your Honor.

5    *Q.*  And do you understand when you plead guilty -- in this

6    case, when you pled guilty or when you plead no contest, you

7    give up your right to have the Government prove each essential

8    element of the crime beyond a reasonable doubt?

9        Do you understand that?

10   *A.*  Yes, Your Honor.

11   *Q.*  And when you pled guilty or you plead no contest, you give

12   up all of your defenses, and you may have a number of defenses,

13   but you do give them up when you pled guilty or no contest.

14       Do you understand that?

15   *A.*  Yes, Your Honor.

16   *Q.*  Have you had enough time to speak with your attorney about

17   possible defenses and chances of winning at trial as relates to

18   Count 5?

19   *A.*  Yes.

20   *Q.*  Do you understand what it says the Government could prove

21   in your case as the factual basis for Count 5?

22           *MR. PEACOCK:*  Your Honor, could the Court rephrase

23   that?

24           *THE COURT:*  Yes.

25

Pauline A. Stipes, Official Federal Reporter

 1    *BY THE COURT:*

 2    *Q.*  Do you understand what the Government says it can prove in

 3    your case in Count 5?

 4              *MR. PEACOCK:*  Just one second, Judge.

 5              *THE DEFENDANT:*  Yes, I understand the words.

 6              *THE COURT:*  Did you say you understand the words?

 7              *THE DEFENDANT:*  Yes, Your Honor.

 8    *BY THE COURT:*

 9    *Q.*  I want to make sure you are answering this question:  That

10    you understand what the Government says it can prove in your

11    case; is that a yes or a no?

12    *A.*  Your Honor, I understand what they say they can prove.

13              *THE COURT:*  Mr. Peacock, do you take any exception or

14    objection to the facts as summarized on behalf of the

15    Government?

16              *MR. PEACOCK:*  We choose not to contest.

17              *THE COURT:*  Does the Defendant agree if this case had

18    gone to trial, the Government could have proven what it says it

19    could have proven in the proffer beyond a reasonable doubt?

20              *MR. PEACOCK:*  We take no position.  We choose not to

21    contest that.

22    *BY THE COURT:*

23    *Q.*  Mr. Harding, do you agree the Government could have proven

24    what it says it could prove beyond a reasonable doubt?

25    *A.*  I choose not to contest.

                    Pauline A. Stipes, Official Federal Reporter

| | |
|---|---|
| 1 | THE COURT: Mr. Peacock, do you agree if the case went |
| 2 | to trial, I would have sent the case to the jury? |
| 3 | MR. PEACOCK: No, Your Honor, I choose not to contest |
| 4 | those facts on behalf of Mr. Harding. |
| 5 | THE COURT: Do you stipulate -- Mr. Peacock, do you |
| 6 | stipulate the Government's factual recitation contains the |
| 7 | essential elements of the crime? |
| 8 | MR. PEACOCK: If those facts were proven, I believe it |
| 9 | would state a prima facie case. |
| 10 | THE COURT: Does the Government believe the Court |
| 11 | needs to consider anything further before it makes a finding |
| 12 | whether the Government has set forth sufficient facts to |
| 13 | establish the crime of attempt to coerce and entice a minor to |
| 14 | engage in sexual activity, in violation of 18 U.S.C. 2422 (b) |
| 15 | in light of the Defendant's responses? |
| 16 | MR. FUNK: No, Your Honor. |
| 17 | THE COURT: Okay. I find the facts set forth are |
| 18 | sufficient to establish the crime charged in Count 5, attempt |
| 19 | to coerce and entice a minor to engage in sexual activity, in |
| 20 | violation of 18 U.S.C. 2422(b). |
| 21 | Turning to the last count of the superseding |
| 22 | indictment, which is Count 6, if the Government would set forth |
| 23 | the elements of this offense as well as the factual basis. |
| 24 | As with each and every other count, Mr. Harding, I ask |
| 25 | you to listen carefully. The Court will ask the same line of |

1   questioning with regard to Count 6.

2       MR. FUNK: The definition of sexually explicit conduct

3   applies to Count 6 as they did to Counts 1, 2 and 3.

4       THE COURT: Do you understand that, Mr. Harding?

5       THE DEFENDANT: Yes.

6       MR. FUNK: Production of child pornography, the

7   Government would be able to prove the Defendant guilty of this

8   crime through the following facts and prove so beyond a

9   reasonable doubt.

10      One, an actual minor, that is a real person who was

11  less than 18 years old, was depicted; two, the Defendant

12  employed, used or persuaded a minor to engage in sexually

13  explicit conduct for the purpose of producing a visual

14  depiction of the conduct and; three, the visual depiction was

15  produced using materials that had been mailed, shipped or

16  transported in interstate or foreign commerce by any means,

17  including by computer.

18      The term "interstate or foreign commerce" means the

19  movement of a person or property from one state to another

20  state, or from one state to another country.

21      The term "state" includes a state of the United

22  States, the District of Columbia or any commonwealth, territory

23  or possession of the United States. It is not necessary for

24  the Government to prove the Defendant knew that the materials

25  used to produce the visual depiction had moved in interstate or

Pauline A. Stipes, Official Federal Reporter

1  foreign commerce.

2          The term "minor" is any person who is less than 18

3  years old.

4          The term "producing" means producing, directing,

5  manufacturing issuing, publishing or advertising.

6          The term "computer" means an electronic, magnetic,

7  optical, electrochemical or other high-speed data processing

8  device performing logical, arithmetic or storage functions, and

9  includes any data storage facility or communications facility

10  directly related to or operating in conjunction with that

11  device, but the term does not include an automated typewriter

12  or typesetter, a portable hand-held calculator or similar

13  devices that are limited in function to only word processing or

14  mathematical calculations.

15          The term "visual depiction" includes undeveloped film

16  and videotape and data stored on a computer disk or by any

17  other electronic means that can be converted into a visual

18  image.

19          The following is the factual basis for Count 6:

20          On September 22, 2015, a search warrant was executed

21  at the residence of Michael Harding located in Port St. Lucie,

22  Florida, in the Southern District of Florida.  An LG-D800

23  cellular telephone owned by Michael Harding was discovered in a

24  nightstand next to his bed in his bedroom.  The phone contained

25  images of Michael Harding and the personal bank account

1    information of Mr. Harding.

2          The cell phone number matched the number Michael

3    Harding had on file at the Port St. Lucie Police Department as

4    his personal number.  The LG-D800 phone was manufactured in

5    Korea and was shipped and transported in interstate and foreign

6    commerce prior to September 22, 2014.

7          A forensic examination of the LG-D800 cellular

8    telephone revealed the presence of thumbnail, (imgcache,

9    I-M-G-C-H-C-H-E, .0 underline embedded underline 1092.jpg.)

10          I should put on the record because the image was

11    produced on November 17, 2014, that the LG-D800 cell phone had

12    been manufactured in Korea and shipped in foreign commerce

13    prior to November 17, 2014.

14          A forensic examination showed that there was a deleted

15    video named -- or titled rather, 20141117 underline 165134.mp4.

16    This image was originally located in the following path:

17    \0\DCMI\Camera\20141117, underline, 1650134.mp4.

18          The naming convention is consistent with other images

19    and videos produced by the phone in the "Camera" folder.  When

20    a video is recorded by the phone, a thumbnail image is

21    automatically created by the phone with an image from a frame

22    of the video.  Because the video and the thumbnail image are

23    stored in separate areas on the phone, it is possible to delete

24    the video without deleting the thumbnail image.

25          The image depicts Michael Harding's eight year old

Pauline A. Stipes, Official Federal Reporter

 1    stepdaughter performing oral sex on him.  Chat messages

 2    recovered from the LG-D800 phone contain references to the

 3    image found on the phone.

 4         Michael Harding, in Kik and Skype chat messages

 5    contained within the LG-D800 cell phone, describes how his then

 6    eight year old stepdaughter performed oral sex on him, how he

 7    videotaped the sex act, and then how he deleted the video

 8    because he was afraid of getting caught.  The biological mother

 9    of Michael Harding's step daughter is able to identify her

10    daughter in the thumb nail image.

11         Special Agent Brian Rey would be able to testify that

12    finding the thumb nail image on the phone is consistent with

13    the phone being used to create the video and the user deleting

14    the video.  He would also be able to testify that, consistent

15    with other images found on the cell phone, the video was

16    created on November 17, 2014.

17         THE COURT:  Is Special Agent Brian Rey here?

18         MR. FUNK:  He is.

19         THE COURT:  Does the Government believe it is

20    necessary to have him testify as to what you just proffered or

21    that your proffer is sufficient?

22         MR. FUNK:  The proffer is sufficient, Your Honor.

23         THE COURT:  Does the Defense belief the proffer is

24    sufficient?

25         MR. PEACOCK:  We choose not to contest, Your Honor.

1    *BY THE COURT*:

2    Q.  Mr. Harding, first, as to the essential elements of the

3    crime in the second superseding indictment as to Count 6,

4    producing child pornography, in violation of 18 U.S.C. 2251(a)

5    and (e), do you understand that these are the essential

6    elements of that crime which Mr. Funk, on behalf of the

7    Government, outlined in the beginning of his recitation of

8    Count 6?

9    A.  Yes, Your Honor.

10   Q.  Do you understand that if this case went to trial, the

11   Government would have had to have proven each essential element

12   of this crime set forth in Count 6, just as with all of the

13   other crimes, beyond a reasonable doubt?

14   A.  Yes, Your Honor.

15   Q.  Do you understand when you plead guilty, you give up the

16   right to have the Government prove each essential element of

17   the crime beyond a reasonable doubt?

18   A.  Yes.

19   Q.  When you plead guilty, you give up all of your defenses,

20   and there may be a number of defenses you have to Count 6, as

21   with any other count, but you give all of them up by pleading

22   guilty?

23   A.  Yes, Your Honor.

24   Q.  Have you had enough time to speak with your attorney about

25   possible defenses and winning at trial with respect to Count 6

1    or any other count?

2    A. Yes.

3    Q. After the essential elements, he went on to give a factual

4    basis to support the Government's ability to present and prove

5    beyond a reasonable doubt the crime set forth in Count 6,

6    producing child pornography.

7         Do you understand what the Government says it can prove in

8    this case, specifically now as to Count 6, as we have already

9    gone through in Counts 1 through 5?

10   A. Yes, I understand what the Government says it can prove.

11        THE COURT: Mr. Peacock, do you take any exception to

12   the facts summarized by the Government?

13        MR. PEACOCK: On behalf of Mr. Harding, we do not

14   contest.

15        THE COURT: Mr. Peacock, do you agree the Government

16   could have proven what it said it would have proven beyond a

17   reasonable doubt?

18        MR. PEACOCK: We do not contest.

19        THE COURT: That is with regard to Count 6. Mr.

20   Harding, do you agree the Government could have proven what it

21   says it could have proven in Count 6?

22        THE DEFENDANT: I wish not to contest, Your Honor.

23        THE COURT: Mr. Peacock, do you agree had the case

24   gone to trial, I would have sent the Defendant's case to the

25   jury, now speaking about Count 6, as we covered in Counts 1

1  through 5?

2       MR. PEACOCK:  Once again, Your Honor, we do not

3  contest that.

4       THE COURT:  Mr. Peacock, do you stipulate the

5  Government's factual recitation contains the factual elements

6  of the crime in Count 6.

7       MR. PEACOCK:  If those facts were proven, I believe it

8  would.

9       THE COURT:  Does the Government believe there should

10  be any further inquiry or presentation before the Court makes

11  its finding whether the Government has set forth the specific

12  facts -- sufficient facts to prove the charge of producing

13  child pornography in Count 6?

14       MR. FUNK:  No.

15       THE COURT:  The Court finds the Government could prove

16  and has proffered sufficient facts to establish the crime

17  charged in Count 6, production of child pornography, 18 U.S.C.,

18  2251(a) and (e).

19       Does the Government believe that the Court should make

20  any further inquiry on any matter or go over anything further

21  before it inquires of the Defendant, Mr. Harding, as to how he

22  wishes to plead to each of the charges in the second

23  superseding indictment?

24       MR. FUNK:  No, Your Honor, thank you.

25       THE COURT:  Mr. Peacock, do you believe there is

1    anything the Court should cover and explain to Mr. Harding or

2    inquire of Mr. Harding before it goes to the next stage of the

3    plea colloquy in asking how he wishes to plead?

4         MR. PEACOCK:  No, I think the Court covered

5    everything.

6         I want the Court to know, I may be splitting hairs

7    here, I would like to use the phrase nolo contendere for the

8    actual plea.

9         THE COURT:  Does the Government have any objection to

10   the use of that phrase?

11        MR. FUNK:  No, Your Honor.

12   BY THE COURT:

13   Q.  Mr. Harding, have you had enough time to consider and

14   discuss with your attorney whether you wish to plead guilty

15   and/or how you wish to plead to any of the charges that are put

16   forth in the second superseding indictment?

17   A.  I am sorry, Your Honor, repeat that.

18   Q.  Have you had enough time to consider and discuss with your

19   attorney how you wish to plead to the charges in the second

20   superseding indictment?

21   A.  Yes.

22   Q.  Okay, I will take it count by count.

23        Mr. Harding, how do you wish to plead to the charge set

24   forth in Count 1, distributing material involving sexual

25   exploitation of minors, in violation of 18 U.S.C. Section

1   2252(a)(2)?

2   *A.* Guilty.

3   *Q.* Mr. Harding, how do you wish to plead to Count 2,

4   distributing material involving sexual exploitation of minors,

5   in violation of 18 U.S.C. Section 2252(a)(2)?

6   *A.* Guilty.

7   *Q.* How do you wish to plead as to the charges set forth in

8   Count 3 of the second superseding indictment, distributing

9   material involving sexual exploitation of minors, in violation

10   of 18 U.S.C. Section 2252(a)(2)?

11   *A.* Guilty, Your Honor.

12   *Q.* How do you wish to plead to the charges set forth in Count

13   4 of the second superseding indictment, possession of material

14   involving sexual exploitation of minors, in violation of 18

15   U.S.C. 2252(a)(4)(B)?

16   *A.* Guilty.

17   *Q.* How do you wish to plead to Count 5 of the second

18   superseding indictment, attempt to coerce and entice a minor to

19   engage in sexual activity, in violation of 18 U.S.C. 2422(b)?

20   *A.* Nolo contendere.

21   *Q.* How do you wish to plead to the charge set forth in Count 6

22   of the second superseding indictment, producing child

23   pornography, in violation of 2251(a) and (e)?

24   *A.* Nolo contendere.

25           *THE COURT:* Mr. Peacock, are you satisfied that Mr.

 1    Harding understands the consequences of his guilty plea and

 2    nolo contendere plea?

 3         MR. PEACOCK:  Yes.

 4         THE COURT:  Does the Government agree that Mr.

 5    Harding understands the plea to his charges?

 6         MR. FUNK:  Yes.

 7         THE COURT:  Have all of the victims known to the

 8    Government been notified about the change of plea here today

 9    and given the opportunity to be reasonably heard, pursuant to

10    18 U.S.C. 3771, paren, small a paren four?

11         MR. FUNK:  The mother of the minor child is present.

12    She does not wish to make a statement at this time.

13         THE COURT:  Could you -- what were you going to say?

14         MR. FUNK:  All other victims known to the Government

15    have been notified.

16         THE COURT:  And they have chosen not to appear?

17         MR. FUNK:  There are no other identified victims at

18    this time, we are in the process of determining that.

19         THE COURT:  I would like to have the victims -- the

20    victim's mother, who you said was here but did not want to be

21    heard, simply, I would like her to state that she is here.

22         I would like to personally inquire of her that she

23    does not want to be heard.  I will respect her desire not to be

24    heard, but I would like to get it on the record.

25         If I could just have you sworn in.

```
 1              (Ashley Harding was duly sworn.)

 2     BY THE COURT:

 3     Q.   Okay.  Good morning.

 4          Would you state your name for the record.

 5     A.   Ashley Harding.

 6     Q.   Okay.  So, you are the mother of the person who was

 7     referred to as the eight year old stepdaughter in Count 6?

 8     A.   Yes.

 9     Q.   Okay.  And I just want to make sure that you know that you

10     have the opportunity to be heard here today.

11          Have you understood everything that has happened here

12     today?

13     A.   Yes.

14     Q.   Okay.  You have the opportunity to be heard, to say

15     anything you would like or say nothing at all.  I want to make

16     sure you understand that.

17          Do you understand that?

18     A.   Yes.

19     Q.   Do you have any questions of the Court as to what has

20     happened here today?

21     A.   No.

22     Q.   Are you satisfied with what has happened here today in

23     terms of the outcome of Mr. Harding's decision with respect to

24     how he is choosing to plead as to the six counts in this matter

25     in the second superseding indictment?
```

Pauline A. Stipes, Official Federal Reporter

 1   A.   Yes.

 2   Q.   Okay.  And you have no questions of the Court?

 3   A.   No, ma'am.

 4   Q.   You have no objection to what is happening here today?

 5   A.   No.

 6   Q.   Okay.

 7            THE COURT:  Does the Government believe there should

 8   be any further inquiry?

 9            MR. KILLINGER:  No.  Russell Killinger.  I want to put

10   on the record I have had extensive conversations with Ms.

11   Harding and her mother and her father, and I've explained to

12   them -- they are here today, they have a right to be here.

13            I explained they will have an opportunity at

14   sentencing and leading up to the sentencing, during the

15   Pretrial Services pre-sentence investigation to make whatever

16   statements or comments that they want to make to the Court

17   then.

18            THE COURT:  Mr. Peacock, do you believe there should

19   be any further inquiry of Mrs. Harding here today?

20            MR. PEACOCK:  No ma'am.

21            THE COURT:  Okay, thank you very much.

22            Anything further from the Government before the Court

23   makes its finding?

24            MR. FUNK:  No.

25            THE COURT:  From Defense?

 1          *MR. PEACOCK:*  No, Your Honor.

 2          *THE COURT:*  Okay, I find that the Defendant, Mr.

 3    Harding, is alert and intelligent, fully competent and capable

 4    of entering an informed plea in this case; that he is aware of

 5    the nature of the charges and the consequences of the plea,

 6    that is both the plea of guilty as to Counts 1 through 4 and

 7    plea of nolo contendere as to Counts 5 and 6; and the plea of

 8    guilty as to Counts 1 through 4, and nolo contendere as to

 9    Counts 5 and 6, are knowing and voluntary pleas supported by an

10    independent basis in fact.

11          I find that Mr. Harding has freely, voluntarily and

12    intelligently entered his plea of guilty as to Counts 1 through

13    4, and nolo contendere to 5 and 6, and there are no promises,

14    no threats or mental impediment.  And in addition, Mr. Harding

15    has had the advice of a competent attorney with whom he is

16    satisfied.

17          The plea is accepted and the Defendant is adjudged

18    guilty of Counts 1 through 3, distributing material involving

19    sexual exploitation of minors, in violation of 18 U.S.C.

20    Section 2252(a)(2), Count 4, possession of material involving

21    sexual exploitation of minors, in violation of 18 U.S.C.

22    Section 2252(a)(4)(B), Count 5, attempt to coerce and entice a

23    minor to engage in sexual activity, in violation of 18 U.S.C.

24    Section 2422(b), and Count 6, producing child pornography, in

25    violation of 18 U.S.C. Section 2251(a) and (e).

```
 1              These are all set forth in the second superseding
 2   indictment.
 3              A written Pre-Sentence Report will be prepared by the
 4   Probation Office to assist me in sentencing.
 5              Mr. Harding, you will be asked to give information for
 6   the report.  Your attorney may be present for that if you wish.
 7   You should cooperate and be truthful with the Probation Officer
 8   or things may not go as well as you like during sentencing.
 9              You and your attorney will have an opportunity to read
10   the report and object to it at the sentencing hearing.  You and
11   your attorney will have a chance to be heard at the sentencing
12   hearing, as well as the Government.  The victims will have a
13   chance to be heard at the sentencing hearing.
14              I refer Mr. Harding to the Probation Office for the
15   Pre-Sentence Investigation Report.  And sentencing will be set
16   on which date?
17              THE COURTROOM DEPUTY:  May 16th, at 9:30 a.m.
18              THE COURT:  May 16th, 9:30 a.m. here in Ft. Pierce.
19              Is there anything further that the Government believes
20   the Court needs to address in connection with the change of
21   plea?
22              MR. FUNK:  No, Your Honor, thank you.
23              THE COURT:  Is there anything further that Defense
24   believes the Court needs to address with the change of plea?
25              MR. PEACOCK:  No, ma'am.
```

Pauline A. Stipes, Official Federal Reporter

1        *THE COURT:*  Okay, thank you very much.

2        *MR. PEACOCK:*  Thank you.

3     *(Thereupon, the hearing was concluded.)*

4                              * * *

5        I certify that the foregoing is a correct transcript

6  from the record of proceedings in the above matter.

7

8     Date:  June 29, 2016

9                    /s/ Pauline A. Stipes, Official Federal Reporter

10                       Signature of Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Pauline A. Stipes, Official Federal Reporter