UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:18-CIV-14359-ROSENBERG/MATTHEWMAN
(2:15-CR-14057-ROSENBERG)

MICHAEL EDWIN HARDING,

       Movant,

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING MOVANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE [DE 1]

This Cause is before the Court upon Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, following his guilty plea to three counts of distributing material involving sexual exploitation of minors in violation of 18 U.S.C. § 2252(a) and one count of possession of material involving minors in violation of 18 U.S.C. 2252(a)(4)(B), and his no contest plea to one count of attempting to coerce and entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) and one count of producing child pornography in violation of 18 U.S.C. § 2251(a) and (c) in Case No. 15-CR-14057-ROSENBERG in the U.S. District Court for the Southern District of Florida [DE 1]. Judge Robin L. Rosenberg sentenced Movant to 240 months as to each of Counts 1–4, life imprisonment as to Count 5, and 360 months as to Count 6, all to be served concurrently.

This matter has been referred to the undersigned U.S. Magistrate Judge for consideration and report and recommendation, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida [DE 16]; [DE 53]. The Court held an evidentiary

hearing on Counts Two and Four on July 27 and July 28, 2021 [DE 65; DE 68-69]. During the evidentiary hearing, Movant orally amended his Motion to withdraw his request to vacate the guilty plea and sentences in Counts 1–4 and now only seeks to vacate the no contest plea and sentences entered for Counts 5 and 6 [DE 69]. To be clear, during the evidentiary hearing, Movant consulted with his counsel and then knowingly and voluntarily withdrew any and all challenges to Counts 1-4. Movant now seeks solely to vacate Counts 5 and 6. Movant also conceded at the hearing that the Government's evidence against him included 600 or more images of child pornography, as well as sadomasochistic images. Therefore, as Movant has abandoned his challenges to Counts 1-4, the Court focuses its analysis on Counts 5 and 6.

## **BACKGROUND**

### 1. **Claims**

Movant, Michael Edwin Harding, moved to vacate, set aside, or correct his conviction in a motion filed on September 4, 2018 [DE 1]. Movant presented eight claims for relief and requested an evidentiary hearing. *Id*. Construing the arguments liberally, as afforded to *pro se* litigants pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant has essentially raised:

1. Counsel was ineffective for failing to suppress evidence obtained from AT&T, KIK (Messenger) Interactive, Inc., and Skype [DE 1-1 at 1].

2. Counsel was ineffective for failing to properly advise Movant of the application of the sentencing guidelines, including that Movant would be subject to mandatory registration as a sex offender and Movant was facing a possible sentence of life imprisonment [DE 1-1 at 4].

3. Counsel was ineffective for failing to object to the Court's plea colloquy [DE 1-1 at 9].

4. Counsel was ineffective for failing to raise and/or file objections to the sentencing enhancements [DE 1-1 at 10–11].

5. The Court failed to inform Movant that he would be required to register as a sex offender and be subject to possible involuntary civil commitment, and the Court misadvised him on the mandatory minimum sentence for Count 6 [DE 1-1 at 15].

6. There was not a factual basis for the Court to have accepted a nolo contendere plea to Counts 5 and 6 because there was no factual basis articulated as to the "substantial step" Movant took to commit the offenses and because counsel was ineffective for failing to object to the Government's "vague reference to a minor daughter" [DE 1-1 at 17–18]

7. Counsel was ineffective for failing to object to hearsay testimony and object to or exclude uncharged conduct [DE 1-1 at 19].

8. Counsel was ineffective for failing to disclose a conflict of interest in Movant's representation [DE 1-1 at 22].

## 2. Offense and Change of Plea Hearing

On November 12, 2015, a federal grand jury returned a six count second superseding indictment charging Movant with three counts of distributing material involving sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2), one count of possession of material involving sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(4)(B), one count of attempting to coerce and entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of producing child pornography, in violation of 18 U.S.C.                    § 2251(a) and (e) [DE 6-3].

On February 22, 2016, Movant pled guilty to Counts 1 through 4 and he pled no contest to Counts 5 and 6 of the Second Superseding Indictment [DE 6-4 at 51–53]. There was no written plea agreement.

3

a.  Explanation of possible sentence

Prior to the entry of the plea, the Court inquired whether Movant had been forced or coerced into entering the plea, to which Movant responded that he had not. [DE 6-4 at 8]. The Court asked, "do you understand adjudication of guilt as to each and every one of these offenses may deprive you of valuable civil rights," to which Movant replied affirmatively. [DE 6-4 at 10].

The Court then outlined the maximum penalty for each count. For Counts 5 and 6, the only Counts Movant now seeks to vacate, the Court stated:

> As to Count 5, the maximum penalty you face for attempt to coerce and entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), is ten years to life imprisonment, $250,000 fine, supervised release of five years to life, $100 special assessment, and a $5,000 special assessment unless indigent.

Movant acknowledged that he understood. [DE 6-4 at 13].

And finally, for Count 6, the Court stated:

> Okay, as to Count 6, producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e), the maximum penalty is 15 years to 30 years, $250,000 fine, supervised release of five years to life and a special assessment of $100.

*Id.* Movant acknowledged he understood. *Id.*

The Court then explained to Movant that the claims could run consecutively to one another and explained:

> As the Government just explained, and we are talking about maximum penalties, but you need to be aware of what the maximum penalties are as you consider entering into your change of plea here today, that the maximum penalty as to each and every count can run consecutive with one another, that is back to back with one another. So that you could receive the maximum penalty as to Count 1, which would run back to back with the maximum penalty for Count 2, which would run back to back with the maximum penalty to Count 3, and the same for Counts 4 and 5 and 6.

[DE 6-4 at 15]. Movant acknowledged that he understood that concept. *Id.*

4

The Court also had the Government explain to Movant that the mandatory minimum he was facing was:

> With regard to Count 5, minimum mandatory ten years; Count 6, the minimum mandatory is 15 years.

[DE 6-4 at 16]. Movant acknowledged he understood this. [DE 6-4 at 17].

Movant also acknowledged that his attorney advised him on how the advisory sentencing guidelines might apply to his case. [DE 6-4 at 20].

The Court also explained:

> Neither the Court nor anyone else will be able to determine with certainty the advisory guideline range for your case until after the Pre-Sentence Report has been completed and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the Probation Officer… So, the sentence I ultimately impose may be different from any estimate your attorney may have given you. It may be higher or lower… For example, you heard what the maximum penalties are for each and every offense, and you heard each and every penalty could run back to back to each and every other offense, that is for all six counts the penalty could run consecutively, as I described that to you. If that were a sentence that the Court imposed, and if that sentence was higher than you expected, maybe even higher than what the guideline range is, higher than what your attorney has indicated may be a likely outcome, do you understand that that would not be a basis for you to seek to withdraw your guilty plea?... if the guidelines show, and they may very well show that the sentence imposed under the guidelines is a life sentence, do you understand that that is part of your plea here today and that would not be a basis for you to withdraw your plea at any later time?

[DE 6-4 at 20–22]. Movant acknowledged he understood. [DE 6-4 at 21]. The Government then interjected asking:

> Before we move on to that, one last thing with regard to notice of the Defendant, that he understands conviction for this offense will result in substantial restrictions where he may live, work and associate.

[DE 6-4 at 25].  The Court asked Movant if he understood and he replied that he did, he did not have any questions about that, and did not need to speak with his attorney about that. *Id*.

b.  <u>The factual basis for the plea</u>

At the change of plea hearing, the Court found there was a factual basis for Counts 1-4 proffered by the Government and the Court found the Government could prove the facts and that the facts contained the elements beyond a reasonable doubt. [DE 6-4 at 31; 36]. Movant and Movant's counsel agreed that the Government could have shown a prima facie case on Counts 1-4, which the Court could have sent to the jury. [DE 6-4 at 36].

With regard to Count 5, Movant did not contest the accuracy of the following facts and pled no contest:

> Michael Harding, between August 12, 2015 and September 10, 2015, engaged in chat conversations with a single individual having the Kik Messenger screen name "daddydearaimee" and the Skype screen name "Mel M." The text conversations occurred on the Kik Messenger application, and the Skype application, on Michael Harding's LG-D800 cell phone and Samsung cell phone. The person with whom Michael Harding was having the conversation, hereinafter referred to as "daddydearaimee," told Michael Harding that he had a seven year old daughter and a 12 year old daughter.
>
> "Daddydearaimee" sent Michael Harding non-nude pictures of two girls he stated were his minor children. The two girls shown in the images are clearly minor females. "Daddydearaimee" claimed he had performed sex acts on both of his own minor children. Michael Harding stated that he had previously engaged in sexual acts with his nine year old stepdaughter.
>
> Michael Harding initiated a conversation about exchanging their minor children for the purpose of engaging in sexual acts. Michael Harding graphically described the sex acts he had performed on his stepdaughter. Michael Harding sent "daddydearaimee" non-nude images of both of his stepdaughters showing their bodies, without showing their faces. One of the images showed the face of Michael Harding's nine year old stepdaughter, the one that Michael Harding proposed swapping for sex.
>
> Michael Harding provided real biographical information about himself, including his age, residence and the composition of his family. He had detailed conversations with "daddydearaimee" regarding where they would meet and how Michael Harding would explain to his wife he was traveling alone with his nine year old stepdaughter.
>
> In carrying on these conversations, Michael Harding did attempt to entice the minor child of "daddydearaimee" to engage in sexual acts that would constitute a violation of Florida law.

[DE 6-4 at 38–40].

With regard to Count 6, Movant also did not contest the accuracy of the following facts and pled no contest:

> On September 22, 2015, a search warrant was executed at the residence of Michael Harding located in Port St. Lucie, Florida, in the Southern District of Florida. An LG-D800 cellular telephone owned by Michael Harding was discovered in a nightstand next to his bed in his bedroom. The phone contained images of Michael Harding and the personal bank account information of Mr. Harding.
> The cell phone number matched the number Michael Harding had on file at the Port St. Lucie Police Department as his personal number. The LG-D800 phone was manufactured in Korea and was shipped and transported in interstate and foreign commerce prior to September 22, 2014.
> A forensic examination of the LG-D800 cellular telephone revealed the presence of thumbnail, (imgcache, I-M-G-H-C-H-E,.0 underline embedded underline 1092.jpg.)
> I should put on the record because the image was produced on November 17, 2014, that the LG-D800 cell phone had been manufactured in Korea and shipped in foreign commerce prior to November 17, 2014.
> A forensic examination showed that there was a deleted video named – or titled rather, 20141117 underline 165134.mp4. This image was originally located in the following path: \0\DCMI\Camera20141117, underline 1650134.mp4. The naming convention is consistent with other images and videos produced by the phone in the "camera" folder. When a video is recorded by the phone, a thumbnail image is automatically created by the phone with an image from a frame of the video. Because the video and thumbnail image are stored in the separate areas of the phone, it is possible to delete the video without deleting the thumbnail image.
> The image depicts Michael Harding's eight-year-old stepdaughter performing oral sex on him. Chat messages recovered from the LG-D800 phone contain references to the image found on the phone. Michael Harding, in Kik and Skype chat messages contained within the LG-D800 cell phone, describes how his then eight year old stepdaughter performed oral sex on him, how he videotaped the sex act, and then how he deleted the video because he was afraid of getting caught. The biological mother of Michael Harding's stepdaughter is able to identify her daughter in the thumbnail image.

[DE 6-4 at 45-47].

### 3. Sentencing

The Court conducted Movant's sentencing hearing on May 16, 2016 [DE 6-5] and May 23, 2016 [DE 6-6]. The Court explained that it had received and reviewed a series of pleadings filed

prior to sentencing by the parties. Movant's counsel indicated at the sentencing hearing that there were no factual objections to be resolved. [DE 6-5 at 8]. Both the Government and the defense agreed with the court that the Presentence Investigation Report ("PSI") had correctly computed Movant's total offense level at 43 and his criminal history category, and further agreed that his guideline range of imprisonment was life imprisonment. [DE 6-5 at 8].  Judge Robin L. Rosenberg sentenced Movant to 240 months as to each of Counts 1–4, life imprisonment as to Count 5, and 360 months as to Count 6 all to be served concurrently. *See* 15-CR-14057-Rosenberg.

### 4.   Evidentiary Hearing

On May 18, 2019, upon review of Movant's Petition, the Court issued an order appointing counsel and setting an evidentiary hearing solely on Movant's claim (Ground 4) that his defense counsel was ineffective for failing to raise objections to the PSI and for abandoning raised objections at sentencing without his assent. [DE 17]. The Court found that it "cannot determine on the basis of the current record whether trial counsel was constitutionally deficient in failing to raise and/or abandoning raised objections to the PSI at sentencing." [DE 17 at 1–2]. On June 21, 2021, "in the interest of judicial economy," the Court expanded the scope of the evidentiary hearing to also include Movant's claim (Ground 2) that his defense counsel was ineffective for misadvising him regarding the consequences of his plea. [DE 65 at 2].

In Ground Two, Movant claims his counsel's representation was ineffective because his counsel failed to properly advise him concerning the application of the federal sentencing guidelines, misadvised him about the consequences of his guilty plea and specifically failed to advise him about sex offender registration and possible civil commitment. [DE 1-1 at 4–9]. Due to this alleged misadvice, Movant claims his plea was not knowingly, voluntarily, or intelligently entered. *Id*. at 4. Movant claims that his counsel failed to advise or incorrectly conveyed how the

advisory guidelines would apply to him at sentencing and that his advisory guideline range would be life. *Id*. Specifically, Movant claims that his counsel never advised him that he could be subject to an additional five-level enhancement under § 4B1.5 and that his counsel intentionally withheld the fact that the Government was requesting that this enhancement be applied. *Id*. at 4–5. Movant also claims his counsel advised him that he would receive a favorable sentence that would not exceed thirty years if he entered the plea and did not subject the Government or the witnesses to a jury trial *Id*. at 6. Additionally, Movant claims that his counsel failed to advise him about mandatory sex offender registration and possible indefinite civil commitment *Id*. at 7.  Movant claims that he would have chosen to proceed to trial if he had been properly apprised of the consequences of his plea. *Id*.

In Ground Four, Movant claims that his defense counsel was ineffective for failing to raise, or abandoning, objections to several enhancements in the PSI. *See* [DE 1-1 at 11–12].  Movant claims counsel was ineffective for failing to object to or provide a basis for the objection to the following:

1. Failing to object to a four (4) level enhancement for material portraying sadistic, masochistic, or other depictions of violence, as listed in paragraph 30 of the PSI [DE 1-1 at 11];

2. Failing to provide a basis for the objection to the five (5) level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, as listed in paragraph 31 of the PSI [DE 1-1 at 12];

3. Failing to object to the five (5) level enhancement based on the offense involving 600 or more images, as listed in paragraph 33 of the PSI when counsel failed to retain an

independent forensic expert to show the Government repeatedly counted the same image [DE 1-1 at 14];

4. Failing to provide a basis for the objection to the five (5) level enhancement based on the Chapter Four enhancement for engaging in a pattern of activity involving prohibited sexual conduct, as listed in paragraph 38 of the PSI and failing to advise Movant that he would be subject to this enhancement at sentencing [DE 1-1 at 15].

a. Relevant evidentiary hearing testimony[1]

i. *Movant's testimony*

Movant testified that in his criminal case, R. Fletcher Peacock, Esq., from the Federal Public Defender's Office, was appointed as his attorney and they met for the first time at his arraignment on September 24, 2015. At this meeting, Mr. Peacock explained the applicable enhancements to Movant's sentence at the time including the possession of 600 or more images, sadomasochistic images, and using a computer. On November 16, 2015, Movant met with Mr. Peacock to discuss the fact that there was now a superseding indictment that included a charge of attempted enticement of a minor to engage in sexual activity. Movant testified that Mr. Peacock showed the sentencing guideline worksheet to Movant and Movant saw the maximum penalty for such a charge was life imprisonment. At this meeting, Mr. Peacock discussed the strength of the Government's case and the details of what the Government could use against him. Mr. Peacock showed Movant printed out images of text messages that Movant had sent but did not show Movant any pornographic images because, as Mr. Peacock explained, he was unable to show them to Movant because of the nature of the images.

---

[1] The testimony has not been formally transcribed and made part of the record. The narrative contained herein is a summary of testimony as recalled by the Undersigned.

Movant was later charged with a second superseding indictment [Movant's Ex. 5][2] which added a charge for the production of child pornography. Mr. Peacock explained to Movant that the basis of this charge was a still image of Movant's stepdaughter performing oral sex on Movant taken as thumbnail from a deleted video in a cache folder that was recovered from Movant's phone.

Movant testified that he received a letter from Mr. Peacock [Movant's Ex. 3] that explained Movant may have a viable defense to the enticement charge and included a copy of *United States v. Lee*, 603 F.3d 904 (11th Cir. 2010), to explain why the Government may not be able to prove the "substantial step" element of the enticement charge.

Mr. Peacock then explained to Movant there were state warrants "drafted" but "not yet executed" out of St. Lucie County, Florida, for two counts of capital sexual battery. Movant testified that his federal and state cases were intertwined as far as he understood.

Movant testified that they verbally discussed the guidelines as applied to the second superseding indictment but that he never saw any "reference book." Movant testified that Mr. Peacock told him that the sentencing range was "pretty high" and "somewhere around the 30-year range" and that it would be able to fluctuate.

Movant testified that Mr. Peacock sent him a copy of *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) [Movant's Ex. 6], an opinion arising from an appeal out of the Middle District of Florida, where there were more than 50 victims, and as a point of comparison, Mr. Peacock explained to Movant that the defendant in that case received a 30-year sentence.

On January 21, 2015, Movant testified that Mr. Peacock met him at the Palm Beach County Jail where Movant explained he was adamant about contesting the enticement count (Count 5) at

---

[2] Movant had not filed his exhibits on CM/ECF at the time of this report. The Exhibits are available with this Court, and Movant is directed to promptly file his exhibits on CM/ECF.

trial. Movant testified that it was his understanding at the time that the guidelines did not justify a life sentence.

Movant testified that on February 18, 2016 he received a hand-delivered letter from Mr. Peacock [Movant's Ex. 7] explaining that he had no chance of winning at trial and that if he accepted responsibility he would appear in a better light in front of the judge.

Movant testified that on February 19, 2016 at the Palm Beach County Jail (five days prior to trial), Mr. Peacock told him that he could enter a plea of no-contest to the enticement and production counts (Counts 5 and 6) and the State would not be able to use the no-contest plea against him in the state criminal proceeding. Movant testified that although Mr. Peacock had just attended a pretrial hearing where the judge acknowledged the sentencing guidelines were life, Mr. Peacock never told him about this hearing.

Movant testified that he did not know the guidelines recommended a life sentence at the time he entered the plea. Movant testified that the first time he learned that the §4B1.5(b) enhancement applied to him was after he received a copy of the PSI. Movant also testified that Mr. Peacock did not tell him that the uncharged conduct stemming from the St. Lucie County case would be admissible at the sentencing hearing.

Movant made no representations as to the advice he was given about whether he would have to register as a sex offender. However, the Government asked Movant questions about the training he underwent as a police officer and whether he was ever instructed about mandatory reporting. Movant replied he knew about mandatory reporting to the Department of Children and Families.

On cross-examination Movant testified that he received no assurances as a part of entering his plea. Movant oscillated between characterizing Mr. Peacock's representation to him as a

professional opinion that he thought Movant was realistically facing 30 years or that Mr. Peacock told him the maximum sentence he was facing was 30 years. He testified that based on the advice he received from Mr. Peacock he did not believe a life sentence was a real possibility. Despite being advised by the Court that he faced a life sentence, Movant testified he believed there was no chance he would be sentenced to life.

Movant testified that Mr. Peacock worked with him to prepare mitigation at sentencing including getting testimony from a psychologist, Dr. Brannon, his mother, and his great Aunt.

Movant testified that he believed that Mr. Peacock pursued this strategy because he was trying to protect Movant's best interest in the pending state case.

ii.    *R. Fletcher Peacock, Esq.*

Mr. Peacock testified that he has been an Assistant Federal Public Defender ("AFPD") since 1986. For a brief period, he was the Federal Defender for the Middle District of Florida, but he returned to the Ft. Pierce Office of the Southern District of Florida as an AFPD. In his capacity as an AFPD, he was appointed to represent Movant.

Mr. Peacock testified that he met with Movant multiple times, wrote him letters, met with Movant's family, researched his case, sent Movant case law, scheduled multiple evidence views, met with the U.S. Probation Officer assigned to author the PSI, filed a motion to quash the indictment, filed objections to the PSI, filed a motion for downward departure, met with the State and reviewed the case file and potential state charges, and strategically framed his objections so they would not adversely impact Movant's pending state case, which would carry a mandatory life sentence in state prison upon conviction.

Mr. Peacock testified that he received paper discovery and attended multiple evidence views to review the contraband in this case. He reviewed hundreds of pornographic images

connected to this case to see which sentencing enhancements may apply to Movant. Mr. Peacock testified that his notes at the time indicated that there were 102 videos and over 600 images.

Mr. Peacock testified that the investigating agent in the case, Agent Ray, set up an additional meeting to view evidence where Mr. Peacock saw a cached image that was taken from Movant's phone that showed Movant's daughter performing oral sex on Movant. After this evidence was mounted against Movant, Mr. Peacock tried to negotiate resolving the state case as part of resolving the federal case. Mr. Peacock testified that there were no offers from the State. Movant testified that Detective LaGrega from the Port St. Lucie Police Department handed over her case file to Mr. Peacock.

Mr. Peacock testified that in his experience this was a particularly difficult case: there was a valid search, Movant willingly spoke to officers, there were messages to others about engaging in sex acts with his minor stepchildren, messages about meeting up to swap children for sex acts, and a clear image of the minor nine-year-old stepdaughter performing a sex act on Movant.

During the representation of Movant, Mr. Peacock said it was difficult to communicate with Movant while he was in protective custody, so he successfully advocated for Movant to be moved to the Palm Beach County Jail.

Mr. Peacock testified that Movant was attentive, thoughtful, and asked questions throughout the course of his representation.

Mr. Peacock testified that when he met with Movant on December 8, 2015, he talked about the factors set forth in 18 U.S.C. § 3553 and the guidelines recommending a life sentence. Mr. Peacock testified that his notes reflect that he told Movant that the guideline calculations amounted to a life sentence. Mr. Peacock testified that his notes from his meetings with Movant in November and December of 2015 show that he told Movant that the advisory guideline sentence was life.

Mr. Peacock initially thought that Movant had a legal argument for why Movant had not taken a substantial step toward enticing his stepdaughter to engage in a sex act, but his thinking on the matter changed once the Government's evidence showed Movant had engaged in grooming of his nine-year-old stepdaughter.

Mr. Peacock testified that he explained the benefits of a no contest plea and how it would be better for Movant's state case because it would not amount to an admission that could be used against him in state court. Mr. Peacock was concerned about the state case because Movant would be subject to a mandatory life sentence if convicted of the state charges. Mr. Peacock testified that he contacted the Government about a no contest plea in the federal case. The Government objected, but Mr. Peacock went forward with the no contest plea and Judge Rosenberg said she would allow it.

Mr. Peacock told Movant that in his opinion he would have a better shot at something less than a life sentence with Judge Rosenberg as opposed to other judges because he found her to be quite thoughtful and sympathetic. He also told Movant he had to think about where he wanted to spend his life and the benefits of serving a life sentence in a federal facility versus a state facility.

On February 17, 2015, Mr. Peacock testified that his notes said he discussed a no contest plea with Movant and discussed the plea colloquy with Movant. DE 70-9 at 3.

Mr. Peacock memorialized his discussion about taking a plea in a letter on February 18, 2016. [DE 70-10 at 7]. Mr. Peacock met with Movant on February 19, 2016 after a status conference with Judge Rosenberg that morning where she acknowledged the guidelines were a life sentence. Mr. Peacock testified he did not relay this status conference discussion to Movant because "we were all aware" of the sentence Movant was facing.

Mr. Peacock never assured Movant he was facing fewer than 30 years—the whole "gist" of the no contest plea was trying to avoid a life sentence. Mr. Peacock testified that Movant was well aware that he was facing a potential life sentence in federal court.

After Counsel and Movant received the PSI, which calculated the advisory federal sentencing guidelines as a recommended a life sentence, Mr. Peacock testified that he wanted to be careful that none of his objections to the PSI would amount to an admission that could be used against Movant in state court. He also did not want to assert any objections which could be construed as Movant not accepting responsibility. Mr. Peacock also testified that he had no legal objection to the Court calculating sentencing enhancements under Chapter 2 and Chapter 4 based on Movant having engaged in a pattern of sexually prohibited conduct.

### iii.   *Julie Harding*

Julie Harding is Movant's mother. She testified that her own notes said that Mr. Peacock told her Movant was facing a sentence of 25 years to life in prison. [Movant's Ex. 12]. Ms. Harding then testified that Mr. Peacock later told her the most Movant was facing was 30 years. Ms. Harding testified that she does not believe a life sentence is appropriate for any crime. Mrs. Harding stated that this conversation did not occur in the presence of Movant.

### iv.   *Judit Sohr*

Judit Sohr is a friend of Julie Harding, Movant's mother. Ms. Sohr testified that she felt that God had told her she needed to write a letter on Movant's behalf at sentencing. Judit Sohr testified she was present when she heard Mr. Peacock tell Julie Harding that Movant was facing at most 30 years. Ms. Sohr testified that Movant was not present during this conversation.

16

## APPLICABLE LAW

To establish a claim of ineffective assistance of counsel, Movant must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, Movant must show that his attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Movant has the burden of proof on an ineffectiveness claim, *Holsey v. Warden*, 694 F.3d 1230, 1256 (11th Cir. 2012), as well as the burden of proof under § 2255, *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (citing cases).

## DISCUSSION

**Claim 1: Counsel was ineffective for failing to suppress evidence.**

Movant asserts that counsel was ineffective for failing to move for suppression and/or exclusion of evidence obtained from the "AT&T, Kik (Messenger) Interactive, Inc., and Skype." DE 1-1 at 1. In support, Movant states that prior to entry of his plea, he requested that trial counsel retain a forensics expert and further investigate the authenticity and admissibility of the evidence proffered by the Government that allegedly came from Movant's phone and computer. DE 1-1 at 2. Movant claims "at no time did counsel challenge the manner and legality by which these records were obtained" despite his request for counsel to file a Motion to Suppress. DE 1-1 at 3.

17

Respondent argues this claim is barred by Movant's knowing and voluntary guilty plea. DE 6 at 26. This Court recommends Claim 1 be denied.

A "defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in that defendant's court proceedings." *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984).[3] This includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself. *See, e.g.*, *McMillin v. Beto*, 447 F.2d 453, 454 (5th Cir. 1971); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Here, Movant does not contend that his plea was involuntary due to his counsel's failure to file a motion to suppress, so the ineffectiveness claim is waived by the plea. *See Baird v. United States*, 445 F. App'x 252, 254 (11th Cir. 2011) (finding "a § 2255 movant who entered a valid guilty plea waives any pre-plea ineffective assistance claims that do not concern his decision to enter the plea"); *accord Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992)).

As a result, Movant has waived his pre-plea constitutional claim that counsel was ineffective for failing to further investigate or suppress the evidence obtained from Movant's cellphone, Kik and Skype accounts. *See, e.g.*, *Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (holding claim that counsel failed to file a motion to suppress is waived by guilty plea because he did not claim that his plea was involuntary). Therefore, this claim should be denied.[4]

---

[3] Although the Movant pled no contest to Claims 5 and 6 rather than guilty, a no contest plea is the legal equivalent of a guilty plea and a waiver of all non-jurisdictional defects. *See, e.g.*, *Lott v. United States*, 367 U.S. 421 (1961).

[4] Moreover, to the extent that Claim 1, or any other of Movant's claims, initially applied to Counts 1-4, Movant has knowingly and voluntarily withdrawn any challenge to Counts 1-4.

**Claim 2: Counsel was ineffective for failing to properly advise Movant of the application of the sentencing guidelines, including that Movant would be subject to mandatory registration as a sex offender and possible indefinite civil commitment.**

In Claim 2, Movant argues his plea was not knowing and voluntary because counsel failed to advise him that a plea would subject him to a possible life sentence and to mandatory registration as a sex offender and possible indefinite civil commitment. [DE 1-1 at 4]. Movant also asserts that he "recently discovered that counsel knew or had reason to know that [Movant's] presumptive guideline range was in the mandatory life range and while counsel made such representations to the Court, he made contrary representations to [Movant]." [DE 1-1 at 6]. Movant asserts "[c]ounsel affirmatively misled [Movant] and repeatedly advised him that by entering a plea he would receive no more than a 30-year sentence." [DE 1-1 at 7].

Movant alleges counsel did not review the sentencing guidelines prior to receiving the PSI. [DE 1-1 at 5]. Specifically, counsel did not advise him he could be subject to an additional five level enhancement under § 4B1.5. [DE 1-1 at 5]. Movant also claims counsel failed to advise Movant that he would mandatorily have to register as a sex offender. [DE 1-1 at 6–7].

a.   Indefinite civil commitment

Movant relies on *Bauder v. Dep't of Corr. State of Fla.*, 619 F.3d 1272, 1274 (11th Cir. 2010), where the state-convicted petitioner's counsel testified that he "did state both at the time of his plea bargain ... and subsequently thereafter to Mr. Bauder that [he] never believed that the facts [of Bauder's case] would be sufficient to trigger a [civil commitment] proceeding." The Eleventh Circuit affirmed the decision of the trial court and agreed with the trial court's reasoning that based on counsel's testimony, which the district court found credible, counsel affirmatively misadvised petitioner and concluded that the affirmative misadvice constituted deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). The Eleventh Circuit explained:

> [Counsel's] deficient performance was his affirmative representation that Bauder would not be exposing himself to further detention past his sentence were Bauder to plead to the charge of aggravated stalking. Here, counsel did not tell Bauder that there was a possible risk of civil commitment, or that the law was unclear as to whether it could apply to Bauder, or that he simply did not know. Rather, counsel told Bauder that pleading to the criminal charge would *not* subject Bauder to civil commitment, and this constituted affirmative misadvice.

*Id*. at 1275.

In the instant case, *Jackson v. United States*, 463 F. App'x 833 (2012), provides guidance. There, the Eleventh Circuit granted a certificate of appealability on the issue of "[w]hether the district court erred by denying the claim that Jackson's plea was not knowing and voluntary as counsel was ineffective for failing to advise him that he would have to register as a sex offender if he pled guilty." The Eleventh Circuit vacated the district court's ruling and remanded for the district court to make a factual finding as to 1) whether counsel misadvised Movant, and 2) whether rejecting the plea bargain would have been rational under the circumstances. *Id*. at 835.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015). Therefore, Movant bears the burden of proving 1) he was affirmatively misadvised in this case and 2) that rejecting the plea bargain would have been rational under the circumstances, per *Jackson*. Movant has not met his burden as to the assertion that counsel affirmatively misadvised Movant on whether he would have to register as a sex offender. Movant did not put on any testimony that he received any misadvice regarding any indefinite civil commitment or registration as a sex offender. In fact, Movant testified that he was aware of some mandatory sex-offender reporting requirements because of his training as a police officer.

Further, Movant cannot show that had he known about the consequence of registering as a sex offender, his plea would not have been rational under the circumstances. In fact, Movant

withdrew his Motion to Vacate Counts 1–4 of the indictment. By pleading guilty to Counts 1–4, Movant would have to register as a sex offender under the Florida Sex Offender Act (Fla. Stat. § 943.0435(1)(a)(2)–(3)). Movant cannot show that rejecting the no contest plea to Counts 5 and 6 would have been rational when he has already pled guilty to offenses that require him to register as a sex offender. Thus, this portion of Claim 2 should be denied.

> b.  Misadvice of possible sentence

Movant claims that Mr. Peacock misadvised him that he was facing a maximum of 30 years if he pled no contest to Counts 5 and 6. Movant's testimony and the Motion to Vacate assert that had Mr. Peacock advised Movant he was facing the possibility of a life sentence, he would have insisted on going to trial.

"One of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether [s]he should enter a plea of guilty." *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis . . . as such an omission cannot be said to fall within the wide range of professionally competent assistance demanded by the Sixth Amendment." *Id.* (internal quotation marks omitted); *Finch v. Vaughn*, 67 F.3d 909, 916 (11th Cir. 1995).

The thrust of what Movant must show is that 1) counsel erred and 2) "a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Glover v. U.S.*, 522 F. App'x 720, 723 (11th Cir. 2013). The Eleventh Circuit has explained "error" in this context to amount to whether counsel relayed any miscalculation to Movant with his decision to enter a guilty plea. *See, e.g.*, *Brooks v. United States*, 248 F. App'x 77 (11th Cir. 2007).

But even if Movant can show error, he must also show prejudice. As relevant here, the Eleventh Circuit and other federal courts have found that a Movant cannot show prejudice from an attorney's misadvice if Movant was advised of the correct maximum sentence during the plea colloquy. The properly conducted plea colloquy in this case dispels any such prejudice. *See Dickey v. United States*, 437 F. App'x 851, 852 (11th Cir. 2011) (holding movant failed to show prejudice from attorney's alleged wrong advice about the potential sentencing range because during the plea hearing the district court advised him of the minimum and maximum of each count which he stated he understood, and he therefore was fully apprised of his potential sentence); *Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) (finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing because, *inter alia,* "[t]he court ... explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else."); *United States v. McDowell*, No.2013 WL 2321607, at *4 (10th Cir. May 29, 2013) (finding no prejudice from attorney's alleged misinformation about movant's likely sentence where during the plea colloquy the movant affirmed that she understood that the district court had discretion regarding her sentence); *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012) ("A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment."). This Court's review of the plea colloquy clearly shows that the Court advised Movant of the maximum life sentence on Count 5 and Movant acknowledged that possibility.

Here, Movant has not met his burden of establishing attorney error or resulting prejudice. Thus, the Court recommends this portion of Claim 2 be denied.

a. **Movant's attorney, Fletcher Peacock, advised Movant he was facing a life sentence.**

The Court finds that Movant has not met his burden of establishing attorney error; Mr. Peacock testified that he repeatedly advised Movant of the possibility of a life sentence.

This Court finds that Mr. Peacock was a very credible witness during the evidentiary hearing on July 28, 2021. The Court finds that Mr. Peacock is a very experienced federal criminal defense attorney who spent a great deal of time and effort working on Movant's case. Mr. Peacock has been an Assistant Federal Public Defender and a Federal Public Defender for approximately 35 years. The Court finds that Mr. Peacock thought critically about the collateral consequences Movant was facing in state court and the possibility of Movant facing mandatory sentences of life imprisonment for capital sexual battery in Florida state court. Mr. Peacock took careful steps to avoid having Movant incriminate himself as to the state capital sexual battery case while at the same time seeking to put Movant in the best light possible before Judge Rosenberg to avoid a potential life sentence in federal court. This was not an easy task in light of the extensive and reprehensible criminal conduct engaged in by Movant. Mr. Peacock thought critically about the evidence that could possibly be avoided being shown to Judge Rosenberg if Movant entered a no contest plea to Counts 5 and 6 in this case. The Court finds that Mr. Peacock carefully advised Movant of his thinking as to strategy and possible defenses as they evolved throughout his representation of Movant. Mr. Peacock also repeatedly advised Movant that the right to go to trial or take a plea was ultimately Movant's choice.

Ultimately, Mr. Peacock made the strategic recommendation of Movant entering a no contest plea to Counts 5 and 6 in this case because he wanted to protect Movant from incriminating himself in the state prosecution and because he thought that a three-level reduction in Movant's guideline level  for acceptance of responsibility coupled with the family and psychological

witnesses he would put on at sentencing meant that Movant had a greater chance of being sentenced to a term of years less than life. The Court finds that this was a strategy that Mr. Peacock discussed with Movant and a strategy which Movant agreed to at the time.

Most critical to the inquiry here, the Court finds that Mr. Peacock advised Movant he was facing a potential life sentence in federal court, and Mr. Peacock did not affirmatively misadvise Movant that the most Movant would be facing was 30 years. Mr. Peacock's notes from his meeting with Movant in November of 2015 show that the guidelines were 360 to life. Mr. Peacock testified "those guidelines went up in December. I told him the that the guidelines were life." [ECF No. 70-9 at 2 (Mr. Peacock's notes of the December 8, 2015 meeting)]. The Court finds Mr. Peacock's testimony quite credible in this regard. In light of the serious criminal charges lodged against Movant, the Courts finds it unbelievable and highly improbable that Mr. Peacock, one of the most experienced federal criminal defense attorneys in this district, would affirmatively misadvise Movant that Movant was facing no more than 30 years in prison, or was not subject to a potential life sentence.

Movant's testimony that he was told he would not face more than 30 years was equivocal at best. While sometimes he was told he was "assured" he would not face more than 30 years in prison, at other times he characterized Mr. Peacock's statements to him as an "opinion" of his likely sentence. However, the Court finds credible Mr. Peacock's testimony that he never advised Movant that Movant faced no more than 30 years in person. Further, the Court finds credible Mr. Peacock's testimony that he did, in fact, advise Movant that Movant faced a sentence of life imprisonment in federal court. As an experienced criminal defense attorney with an excellent reputation, the Court credits Mr. Peacock's testimony and finds that Mr. Peacock properly advised Movant of the potential life sentence Movant was facing in entering his no contest plea in this case.

The Court finds that Movant's testimony in this regard not to be credible. The Court rejects as incredible Movant's testimony that Mr. Peacock advised Movant that he was facing no more than 30 years in prison, and that Movant was not facing a life sentence in federal court.  Movant is serving a federal life sentence and is clearly desperate to obtain a sentence of less than life. At this point, Movant would likely say anything to avoid serving the remainder of his life in prison.

Likewise, the Court does not find either Julie Harding or Judit Sohr's testimony to be credible, especially in the context of Mr. Peacock and Movant's testimony. Julie Harding is the mother of Movant and does not believe in a life sentence for any perpetrator or for any crime. Movant's mother has a bias in favor of her son and she appears to be doing all in her power to lessen Movant's sentence.  Her testimony is not sufficient to effectively rebut the credible testimony of Mr. Peacock.

Similarly, Judit Sohr felt that God had told her to act on Movant's behalf at sentencing and she has continually advocated on Movant's behalf. Ms. Sohr also has a bias in favor of Movant and his mother. Her testimony that that she heard Mr. Peacock tell Julie Harding that Movant was facing no more than 30 years is not credible and does not effectively rebut the testimony of Mr. Peacock. Further, even if the Court did find Julie Harding and Judit Sohr to be credible, the inquiry is not whether Mr. Peacock told the friends and family about the maximum sentence that Movant was facing—the inquiry is whether Mr. Peacock affirmatively misadvised Movant. It is clear that Movant was not present when Mr. Peacock is alleged to have made these statements to Mrs. Harding and Ms. Shor.

In sum, the Court finds Mr. Peacock did not misadvise Movant.

### b.  Movant has not shown prejudice.

Movant also cannot establish that he was prejudiced. Although it is arguably unorthodox to plead no contest to charges when the sentencing guidelines recommend an advisory life sentence, and although other criminal defense attorneys might have rejected such a strategy, it was not an unreasonable or irrational strategy under the facts of this case. Mr. Peacock laid out the options as such: plead no contest to Counts 5 and 6 in federal court and face a discretionary life sentence with the hope of Movant being put in the best light possible to obtain a sentence of years less than life, or go to trial where, if convicted, Judge Rosenberg would see all the evidence against Movant and possibly hear the testimony of Movant's two minor, stepdaughter victims, Movant would face the possibility of receiving consecutive sentences on all counts, and the evidence presented would potentially be used against Movant in the state court prosecution where Movant would face two mandatory life sentences if convicted.

The Court finds that Movant knowingly and voluntarily accepted and joined Mr. Peacock's recommendation and strategy to enter a guilty plea to Counts 1-4 and a no contest plea to Counts 5 and 6 in an effort to avoid a life sentence in federal court and protect Movant's exposure in state court.  This was a strategic decision made by Movant and counsel after thorough investigation of law and fact, and as repeatedly found, such strategic decisions do not amount to ineffective assistance of counsel. *Daniel v. Comm'r, Alabama Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland,* 466 U.S. at 690–91) ("strategic choices made [by trial counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable") (alterations in original). Unfortunately for Movant, his strategic decision failed and now he seeks to second guess the strategy.

Additionally, as the Eleventh Circuit has found, Movant cannot show prejudice because at the plea colloquy he acknowledged he was facing a life sentence and acknowledged that he understood when the Court explained:

> Neither the Court nor anyone else will be able to determine with certainty the advisory guideline range for your case until after the Pre-Sentence Report has been completed and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the Probation Officer… if that sentence was higher than you expected, maybe even higher than what the guideline range is, higher than what your attorney has indicated may be a likely outcome, do you understand that that would not be a basis for you to seek to withdraw your guilty plea?...

[DE 6-4 at 21]. Because Movant affirmatively acknowledged his possible sentence and that advice of counsel was not a guarantee, he cannot show prejudice. *See Dickey*, 437 F. App'x at 852. Accordingly, the entirety of Claim 2 should be denied.

**Claim 3: Counsel was ineffective for failing to object to the Court's plea colloquy**.

Movant alleges that his counsel was ineffective for failing to object to the plea colloquy because the Court did not properly advise that Movant would be subject to mandatory registration as a sex offender and possible indefinite civil confinement. [DE 1-1 at 10]. This claim should be denied because it is refuted by the record.

Although the Court did not outline these consequences specifically, the Court ensured that Movant acknowledged that he "understands conviction for this offense will result in substantial restrictions where he may live, work and associate." [DE 6-4 at 25].  He was asked if he needed to discuss this further with his attorney and he said no. *Id*.

The district court must "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). This general obligation requires the court to address the defendant about three core concerns underlying Fed. R. Crim. P. 11, ensuring that (1) the guilty plea is free from coercion; (2) the

defendant understands the charges against him; and (3) the defendant is aware of the consequences of his guilty plea. *United States v. Camacho*, 233 F.3d 1308, 1314 (11th Cir. 2000). Rule 11 directs specifically that the court inform the defendant of—and make sure the defendant understands—certain matters. *See* Fed. R. Crim. P. 11(b)(1)(A)–(O). In pertinent part, the district court is obligated to inform a defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release," and of "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H)-(I). As the Eleventh Circuit found in affirming Movant's sentence and conviction on direct appeal, nothing in Rule 11 mandates that the district court explain that a defendant convicted of certain sex offenses must comply with federal and state sex-offender-registration laws. *United States v. Harding*, 696 F. App'x 955, 957 (11th Cir. 2017). Therefore, counsel cannot be ineffective for failing to object to a colloquy that complied with Rule 11. *See Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (counsel cannot be ineffective for failing to raise an argument that is without merit). Accordingly, Claim 3 should be denied.

**Claim 4:   Counsel was ineffective for failing to raise and or file objections to the sentencing enhancements.**

In Claim 4, Movant contends that counsel was ineffective for failing to file objections to several sentencing enhancements or "inexplicably failed to address the objections which he had raised." [DE 1-1 at 10–11].

Respondent argues this assertion is conclusory because Movant fails to articulate how he would have prevailed if counsel had objected, and moreover, there is a sufficient factual basis for each enhancement based on the facts Movant stipulated to. [DE 6 at 30–32].

Movant specifically claims counsel was ineffective for failing to object to or provide a basis for the objection to the following:

1. Failing to object to a four (4) level enhancement for material portraying sadistic, masochistic, or other depictions of violence, as listed in paragraph 30 of the PSI [DE 1-1 at 11]

At the evidentiary hearing, Movant conceded that the materials portrayed sadistic or masochistic or other depictions of violence. Because Movant has conceded this point, Counsel cannot be ineffective for failing to object to this enhancement. Additionally, Movant has not alleged that had counsel objected this claim would be successful. This portion of Claim 4 should be denied.

2. Failing to provide a basis for the objection to the five (5) level Chapter Two enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, as listed in paragraph 31 of the PSI [DE 1-1 at 12]

Mr. Peacock did object to the Chapter Two pattern enhancement. Mr. Peacock testified at the evidentiary hearing that he did not provide a specific basis for this objection because he did not want his objection to be characterized as an admission that could be used against Movant in state court. Mr. Peacock also explained he did not want this objection to be construed as Movant not taking responsibility. Mr. Peacock also testified that he had no legal objection to the Court calculating sentencing enhancements under both Chapter 2 and Chapter 4. *See, e.g.*, *United States v. Rogers*, 989 F.3d 1255, 1263 (11th Cir. 2021) ("[T]he plain language of the guidelines establishes that the Sentencing Commission intended for the enhancements provided for in Chapter 4 to apply cumulatively to any other enhancements from Chapters 2 and 3.... Accordingly, the application of U.S.S.G. §§ 2G2.2(b)(5) and 4B1.5 is not impermissible double counting.") (internal citation omitted).

The Court finds that this portion of Claim 4 should be denied. Mr. Peacock undertook a reasoned strategy to not mount a lengthy objection to this sentencing enhancement because if he did, there was a possibility the Court would not grant a downward variance or recognize his acceptance of responsibility. Counsel's strategic decisions are afforded great deference on

collateral review. *Strickland*, 466 U.S. at 690–91. Further, the Government presented multiple witnesses to support the underlying facts of a pattern of prohibited sexual conduct at sentencing and Movant did not contest the facts proffered by the Government that supported a pattern of sexually prohibited activity at the change of plea hearing. It would have been risky for defense counsel to lodge a lengthy factual objection when the Government had physical evidence and witnesses to support a pattern of sexually prohibited conduct when the ultimate goal of Movant at sentencing was to show the judge he was willing to take responsibility for his actions. Thus, the Court cannot say that counsel's performance was deficient under *Strickland*. The Court recommends this portion of Claim 4 be denied.

3. Failing to object to the (5) level enhancement based on the offense involving 600 or more images, as listed in paragraph 33 of the PSI when counsel failed to retain an independent forensic expert to show the Government repeatedly counted the same image [DE 1-1 at 14]

At the evidentiary hearing, Movant conceded that offense involved 600 or more images. Because Movant has conceded this point, Counsel cannot be ineffective for failing to object to this enhancement. Additionally, Movant has not alleged that had counsel objected this claim would be successful. The Court finds that this portion of Claim 4 should be denied.

4. Failing to provide a basis for the objection to the five (5) level enhancement based on the Chapter Four enhancement for engaging in a pattern of activity involving prohibited sexual conduct, as listed in paragraph 38 of the PSI and failing to advise Movant that he would be subject to this enhancement at sentencing [DE 1-1 at 15]

Again, Mr. Peacock did object to the Chapter Four pattern enhancement, but, as Mr. Peacock explained, he did not provide a specific basis for this objection because he did not want his objection to be characterized as an admission that could be used against Movant in state court. Again, like with the Chapter Two enhancement, Mr. Peacock also did not want this objection to be construed as Movant not taking responsibility. Mr. Peacock also testified that he had no legal

objection to the Court calculating sentencing enhancements under both Chapter Two and Chapter Four.

The Court likewise finds that this portion of Claim 4 should be denied. It was Mr. Peacock's reasoned strategy to not mount a lengthy objection to this sentencing enhancement because if he did, it was possible that the Court would not grant a downward variance for acceptance of responsibility. Counsel's strategic decisions are afforded great deference on collateral review. *Strickland*, 466 U.S. at 690–91. Thus, the Court cannot say that counsel's performance was deficient under *Strickland* and recommends this claim be denied.

**Claim 5:   The Court failed to inform Movant that he would be required to register as a sex offender and be subject to possible involuntary civil commitment, and the Court misadvised him on the mandatory minimum sentence for Count 6.**

This Court has largely addressed Movant's claim that the district court violated Rule 11 in failing to specifically advise Movant that he faced the possibility of indefinite civil commitment and likewise finds it should be denied. Under these facts, the Eleventh Circuit has found that the district court did not err for failing to advise a movant of requirements to register for federal or state sex offender registries when the movant understood he would be subject to "substantial restrictions [on] where he may live, work and associate." *United States v. Harding*, 696 F. App'x 955, 957 (11th Cir. 2017). Here, Movant was aware that he faced substantial restrictions on where he may live, work and associate and expressed no interest in further understanding those restrictions when they were addressed during the change of plea hearing. The district court was not required to provide him with more specifics as to the collateral civil consequences he faced. *See United States v. Camacho*, 233 F.3d 1308, 1314 (11th Cir. 2000).

With regards to the mandatory minimum sentence of Count 6, Movant argues the district court informed him that he faced a mandatory minimum sentence of 10 years when the minimum

mandatory sentence was 15 years. DE 1-1 at 15.  This is squarely refuted by the record.  The district

court had the Government explain "Count 6, the minimum mandatory is 15 years." DE 6-4 at 16.

Therefore, this claim should be denied.

**Claim 6:   There was no factual basis for the Court to have accepted a nolo contendere plea to Counts 5 and 6, because there was no factual basis articulated as to the "substantial step" Movant took to commit the offenses, and counsel was ineffective for failing to challenge the vague reference to a minor daughter.**

Federal Rule of Criminal Procedure 11(b)(3) instructs, "Before entering judgment on a

guilty plea, the court must determine that there is a factual basis for the plea."

> "The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." There is no requirement that there be "uncontroverted evidence" of guilt. The purpose of the Rule 11 requirement that a district court conduct a sufficient inquiry into the factual basis for the plea is "to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading."

*United States v. Lynch*, 595 Fed. Appx. 943, 945 (11th Cir. 2014) (citations omitted). The factual

basis for a plea can be based on both direct and circumstantial evidence.

Although Movant asserts there is not a factual basis for either Count 5 or Count 6, Movant's

claim only explains his reasoning for Count 5 and provides no allegations to support his claim that

there was an inadequate factual basis for Count 6. The Court finds there is a sufficient factual basis

for Count 6, wherein Movant is charged with producing child pornography, given the

Government's evidence of a thumbnail image from a video from Movant's cell phone of his eight-

year-old minor stepdaughter performing oral sex on him.

With regards to Count 5, that Movant attempted to coerce and entice a minor to engage in

sexual activity in violation of 18 U.S.C. § 2422(b), the Eleventh Circuit has explained that there

must be a factual basis that (1) the defendant had the specific intent to engage in the criminal

conduct for which he is charged and (2) that he took a substantial step toward commission of the

offense. *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004).

In the factual proffer agreed to by Movant at the change of plea hearing, the following facts

were set forth:

> "Daddydearaimee" sent [Movant] non-nude pictures of two girls he stated
> were his minor children. The two girls shown in the images are clearly minor
> females. "Daddydearaimee" claimed he had performed sex acts on both of his own
> minor children. [Movant] stated that he had previously engaged in sexual acts with
> his nine year old stepdaughter.
>
> [Movant] initiated a conversation about exchanging their minor children for
> the purpose of engaging in sexual acts. [Movant] graphically described the sex acts
> he had performed on his stepdaughter [Movant] sent "daddydearaimee" non-nude
> images of both of his stepdaughters showing their bodies, without showing their
> faces. One of the images showed the face of [Movant]'s nine year old stepdaughter,
> the one that [Movant] proposed swapping for sex.
>
> [Movant] provided real biographical information about himself, including
> his age, residence and the composition of his family. He had detailed conversations
> with "daddydearaimee" regarding where they would meet and how [Movant] would
> explain to his wife he was traveling alone with his nine year old stepdaughter.

[DE 6-4 at 38–40].

Movant continued a conversation with "daddydearaimee" after the user communicated that

he had performed sex acts on his children. Movant responded that he had also performed sex acts

on his children, showing that he had intent to engage in the production of child pornography.

Further, he planned the logistics as to how he would be able to travel with his stepdaughter to meet

the user and made comments about wanting to avoid law enforcement. DE 70-11. Movant also

described engaging in grooming tactics with his stepdaughters. *See* DE 70-11; *United States v.*

*Syed*, 616 F. App'x 973 (11th Cir. 2015) (finding engaging in grooming tactics common in child

exploitation cases can constitute a substantial step). This cumulatively provides an adequate basis

for the substantial step. *See United States v. Yost*, 479 F.3d 815, 820 (11th Cir. 2007) (finding that

cumulatively sending sexually explicit messages and making arrangements to meet constitute a substantial step).

Movant also tangentially asserts that counsel was ineffective for failing to challenge the Government's reference to a minor daughter without requiring further identification. However, the chat communications with Movant identified daddydearaimee's two minor children as being age 12 and age 7 and the chat communication contained a photo that visually identified the two children. Any claim that the two minors required further identification is without merit when photos of the two clearly minor children were admitted. [DE 6-4 at 38–40].

Given that there was an adequate factual basis, the Court rejects Movant's tangential claim that his trial counsel was constitutionally ineffective for allowing him to proceed with the plea. [DE 1-1 at 18]. Even assuming trial counsel fell short under the first *Strickland* prong (which he did not), Movant has not met his burden of showing prejudice – specifically he has not shown that there is a reasonable probability that he would not have plead no contest had his counsel challenged the identity of the two minor children. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52 (1985) (holding the defendant must show that there is a reasonable probability that, but for counsel;s errors, he would not have pleaded guilty and would have insisted on going to trial). Movant does not even assert that but for counsel's misadvice he would have proceeded to trial, nor he has not provided any evidence to support that conclusion. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Accordingly, Claim 6 should be denied.

**Claim 7:   Counsel was ineffective for failing to object to hearsay testimony and object to or exclude uncharged conduct.**

In Claim 7, Movant contends that counsel was ineffective for failing to move to suppress 404(b) evidence that he sexually abused his minor stepchildren. DE 1-1 at 19. Movant also claims counsel was ineffective for failing to object to Detective LaGrega's hearsay testimony as to what

Movant's minor stepchildren told her during her investigation, and he argues this violated his Confrontation Clause rights. DE 1-1 at 19-20. The Court finds this claim should be denied because a district court may consider reliable hearsay at a sentencing hearing, regardless of its admissibility at trial. *United States v. Honeycutt*, 181 F. App'x 910, 914 (11th Cir. 2006); *United States v. Quan Chau*, 426 F.3d 1318 (11th Cir. 2005). Furthermore, the Eleventh Circuit has concluded the right to confrontation does not apply at sentencing in non-capital cases. *See United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005). Claim 7 should be denied.

**Claim 8:    Counsel was ineffective for failing to disclose a conflict of interest in Movant's representation.**

In Claim 8, Movant argues that counsel was ineffective for failing to disclose that his counsel's paralegal, Deborah Cooley, is the sibling of Probation Officer Edward L. Cooley. DE 1-1 at 22. Movant alleges that because of this conflict, counsel failed to raise meritorious objections to the PSI. DE 1-1 at 22. Probation Officer Edward L. Cooley was assigned to complete the PSI [CR-DE 78]. Respondent argues this claim should be denied because the claim consists of nothing more than vague and conclusory allegations. DE 6 at 37. The Court finds that this claim should be denied because in addition to being conclusory, Movant has failed to establish that the alleged conflict affected counsel's performance "as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

To demonstrate adverse effect, Movant must point to some "plausible alternative defense strategy or tactic that might have been pursued" and "must show some link between the . . . conflict and the decision to forgo the alternative strategy of defense." *United States v. Williams*, 902 F.3d 1328, 1332 (11th Cir. 2018) (internal quotations omitted).

First, Movant has failed to show that the paralegal's familial relationship to the probation officer had any effect on counsel's representation of Movant. It is not immediately apparent why

this paralegal's relationship to the probation officer would create a conflict, especially absent any allegation that the paralegal worked on this case at all. The relationship here is not overtly antagonistic toward Movant, nor has Movant alleged that it is.

Second, Movant has, outside of conclusory allegations, failed to allege a connection between Deborah Cooley and Edward Cooley being siblings and counsel's failure to raise objections to the PSI.

Finally, counsel did raise objections to the PSI and provided a basis for objections where he thought reasonable. Movant has not alleged a plausible alternative defense strategy or tactic that might have been pursued. Simply alleging that counsel could have raised more objections does not equate to raising a plausible defense strategy. Accordingly, this claim should be denied.

## **CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that the Motion to Vacate be DENIED. Further, the undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If Movant files an objection to this Report and Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

## **NOTICE OF RIGHT TO OBJECT**

Because this matter has been pending for an inordinate amount of time, and to promote judicial economy and finality to the parties, it requires prompt resolution.  As such, the Court finds it necessary and appropriate to shorten the time for any objections and response pursuant to Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, the parties shall have **SEVEN (7) DAYS** from the date of being served with a copy of this Report and Recommendation

within which to file written objections, if any, with United States District Judge Robin L. Rosenberg. *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 13th day of August 2021.

WILLIAM MATTHEWMAN
United States Magistrate Judge